2010 Ark. App. 610

**Kelly GALLOWAY, Appellant**

v.

**TYSON FOODS, INC., Appellee.**

**No. CA 10–219.**

Court of Appeals of Arkansas.

Sept. 22, 2010.

Sherri Arman McDonough, Lane, Muse, Arman & Pullen, Hot Springs, for appellant.

Kenneth E. Buckner, Pine Bluff, for appellee.

LARRY D. VAUGHT, Chief Judge.

Kelly Galloway appeals the decision of the Workers' Compensation Commission finding that he failed to prove that he sustained a gradual-onset compensable injury to his right shoulder. He argues that there is a lack of substantial evidence supporting the finding. We affirm.

Galloway worked for appellee Tyson Foods, Inc., on three occasions. His most recent employment began in January 2004. He worked in the "live hang" department,

where he hung chickens. His goal was to hang thirty-five chickens per minute, but he was unable to do it. After three months, he transferred to a department where he maintained knives, working there for one and a half years. In October 2006, he moved to the packing line where he worked until February 12, 2007. There, his jobs were varied. He stacked tubs that weighed seventy-pounds, hung chickens, pushed tubs filled with chickens, packed birds into boxes, and made boxes. He testified that whatever he did in the packing department, he did it over and over as quickly as he could. On February 12, 2007, he was transferred to sanitation, where he cleaned equipment. After a couple of weeks, he returned to the packing line, where he remained until May 30, 2007, when he took a leave of absence from work. After a one-year leave, Galloway's employment with Tyson was terminated.

According to Galloway, sometime in early 2007, while working on the packing line, he began to experience pain in his right shoulder. In his deposition, he stated that the pain began in January 2007. At the hearing, he testified that the pain began in February 2007. The first medical report reflecting Galloway's complaints of shoulder pain (and right elbow pain) was on March 15, 2007. On that date, Galloway went to his family physician, Dr. Robert Williams, who noted that Galloway's pain started Monday, March 12, 2007. While the report did not mention that his pain was work related, Galloway testified that he told Dr. Williams that his elbow and shoulder pain were caused by his work. Dr. Williams took Galloway off work, which Galloway testified improved his condition. But once he went back to work, the pain returned.

Galloway was seen again by Dr. Williams on April 11, 2007. There was no mention in that report that his complaints were caused by work activities. Galloway was given a cortisone shot, which provided some relief, but ultimately, the pain returned, and he took a leave of absence from work. He testified that he took the leave because of his shoulder pain; however, he conceded that when he filled out the paperwork for the leave, he stated that his requested leave was non-work related. It was his testimony that he was afraid that he would be fired and lose his insurance if he stated that it was work related. And while he admitted that, when he filled out the leave form, he reported to the human-resource manager that it was possible that he injured his shoulder doing yard work, he testified that he did not injure his shoulder that way.

Galloway continued to receive treatment from Dr. Williams on June 1, 2007, who noted the possibility of a rotator-cuff injury. There was no mention that the shoulder pain was work related. Dr. Williams referred Galloway to orthopedic surgeon Dr. Kevin Rudder, who first saw Galloway on June 28, 2007. This report reflected a cause of Galloway's shoulder pain—"[h]e evidently was lifting something at work and reportedly he was having pain." Dr. Rudder diagnosed "impingement syndrome with probable rotator cuff tear." A subsequent MRI did not reveal a rotator-cuff tear, but did reveal tendinosis and significant degenerative changes. Dr. Rudder's new diagnosis was "long term overuse impingement syndrome," and he performed surgery on Galloway's shoulder on August 20, 2007. No rotator-cuff injury was identified during surgery. While Galloway appeared to be improving at his October 30, 2007 visit with Dr. Rudder, the following month Dr. Rudder opined that Galloway "cannot go back to work to [lifting chickens]."

On February 18, 2008, Dr. Rudder performed a second surgery. During this

surgery, a small rotator-cuff injury was discovered and repaired. While Galloway was doing "extremely well" ten days after surgery, his problems had returned by April 2008, and Dr. Rudder questioned Galloway's ability to return to work at Tyson. On May 15, 2008, Dr. Rudder opined that Galloway had reached maximum medical improvement and stated that he should not return to work at Tyson that included substantial overhead lifting. In a June 4, 2008 letter, Dr. Rudder stated that

> it is my medical opinion that this patient's injury was definitely a cause of repeated motion stacking and lifting heavy tubes [sic] of ice and chicken at Tyson's. I have discussed this with him and I have told him that going back to work at Tyson is likely_|4going to be unreasonable to try and do.

Dr. Rudder subsequently issued Galloway a twenty-percent impairment rating. Galloway stated that because of his injury, he was unable to return to work at Tyson.

At the hearing, Galloway stated that prior to March 2007, he reported his right-shoulder pain to the company nurse, Kristy Stancil, and to his supervisor, Cassandra Looney. He stated that he was aware that he was supposed to fill out worker's compensation papers for his injury, but that no one offered him these papers. He did not fill out the workers' compensation forms until December 2007.

Looney, who was called by Galloway, worked at Tyson until February 2007, supervising the packing line. She said that during that time Galloway was rotated around to different jobs in the department. She further stated that she did not remember him complaining of shoulder or elbow pain. She also did not remember him working as a tub stacker, which was a permanent assignment job. Stancil, the company nurse, also had no record of Galloway reporting a shoulder problem, although she did have records reflecting that he complained of right-elbow pain in February and March 2007.

The ALJ issued an opinion denying benefits to Galloway, finding that he failed to prove that his right-shoulder problems were caused by a specific incident or gradual onset while working at Tyson. The ALJ specifically found that Galloway failed to establish a causal connection between the injury and his employment at Tyson or that his work was rapid and repetitive. In reaching these findings, the ALJ questioned Galloway's credibility and found the testimony of Looney (who no longer worked for Tyson) and Stancil credible. The Commission |5affirmed and adopted the ALJ's findings.

Galloway's sole point on appeal is that substantial evidence fails to support the Commission's finding that he failed to prove that he sustained a gradual-onset injury. In appeals involving claims for workers' compensation, our court views the evidence in a light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Holland Group, Inc. v. Hughes,* 95 Ark. App. 369, 371, 237 S.W.3d 120, 122 (2006). Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Hughes,* 95 Ark. App. at 371, 237 S.W.3d at 122. The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm the decision. *Id.,* 237 S.W.3d at 122. Where the Commission denies a claim because of the claimant's failure to meet his burden of proof, the substantial evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief. *Id.,* 237 S.W.3d at 122–23. The Commis-

sion is not required to believe any witness, and it may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Id.,* 237 S.W.3d at 123. The Commission may accept or reject medical opinions and determine their medical soundness and probative force. *Id.,* 237 S.W.3d at 123.

To receive benefits for a gradual onset injury, Galloway had to prove five things: (1) that his shoulder injury arose out of and in the course of his employment with Tyson; (2) that the injury caused internal or external physical harm to his body, which required medical services or resulted in death or disability; (3) that the injury was caused by rapid repetitive motion; (4) that the injury was the major cause of the disability or need for treatment; and (5) that the injury was established by medical evidence supported by objective findings. *Malone v. Texarkana Public Schools,* 333 Ark. 343, 349–50, 969 S.W.2d 644, 647 (1998); Ark.Code Ann. § 11–9–102(4)(A)(ii)(a), (D), (E)(ii) (Supp. 2009). In analyzing whether an injury is caused by rapid repetitive motion, the standard as set out in *Malone* is a two-pronged test: (1) the tasks must be repetitive, and (2) the repetitive motion must be rapid. *Malone,* 333 Ark. at 350, 969 S.W.2d at 647. As a threshold issue, the tasks must be repetitive, or the rapidity element is not reached. *Id.,* 969 S.W.2d at 647. Arguably, even repetitive tasks and rapid work, standing alone, do not satisfy the definition; the repetitive tasks must be completed rapidly. *Id.,* 969 S.W.2d at 647–48.

The Commission found that Galloway failed to prove that his right-shoulder injury arose out of and in the course of his employment and that he failed to prove the rapid-and-repetitive-motion element. The Commission's findings were primarily based on its credibility determinations and the medical evidence. It stated that it found that Galloway's testimony about the onset and progression of his injury was contradicted by other more credible evidence, specifically, the testimony of Looney and Stancil and the medical reports. As for the medical evidence, the Commission noted that no rotator-cuff injury was present in August 2007 during Galloway's first shoulder surgery, yet a tear was found in February 2008 during Galloway's second surgery. Because Galloway's last day of work at Tyson was May 30, 2007, the Commission found that the tear "had obviously occurred after the first surgery and long after the claimant ceased his employment with [Tyson]." The Commission acknowledged Dr. Rudder's opinion that Galloway's shoulder problems represented an "overuse" syndrome caused by his repeated lifting of heavy tubs at work. However, the Commission found that Dr. Rudder's opinion was based upon the assumption that Galloway's employment required him to repeatedly lift tubs of chicken and ice that weighed seventy pounds for a substantial time, which was not supported by the testimony of Looney. Finally, the Commission found that there was a lack of evidence demonstrating that Galloway's work at Tyson was rapid and repetitive.

On appeal, Galloway argues that the Commission should be reversed because there was substantial evidence supporting his claim. He points out that there was evidence that all of his jobs at Tyson—not just the stacking of tubs—were rapid and repetitive. He argues that attendance records showed that he took time off work (because of shoulder pain) beginning in 2007. According to Galloway, those records coupled with his testimony that when he was not working in the packing department his shoulder pain subsided supports his gradual-onset injury. He also ques-

tions the Commission's finding that the testimony of Looney and Stancil was credible. He argues that Looney was only present for a few weeks after his pain began and that Stancil's nurses notes documented a work-related, right-elbow injury. Finally, Galloway argues that the record is devoid of another explanation for his injury.

Galloway's argument ignores the standard of review. While it may be true that substantial evidence supports his claim, the standard of review is whether substantial evidence supports the Commission's decision. Based on this standard, we hold that it does and affirm.

The Commission found that Galloway's claim that he suffered a gradual-onset injury to his shoulder was either conflicting or was contradicted by the other evidence in this case. There was conflicting testimony from Galloway about when his shoulder problems actually started—in January, February, or March 2007. He testified that all of his work at Tyson was rapid and repetitive, but Looney's testimony was to the contrary. While he testified that he reported shoulder problems to both Looney and Stancil, they denied that. While he testified that he reported to Dr. Williams that his shoulder problems were caused by his work, Dr. Williams's reports do not support that testimony. The first medical report to relate his shoulder problems to his work at Tyson was on June 28, 2007, when Galloway was seen by Dr. Rudder. The report noted, "he was evidently lifting something at work and reportedly he was having pain," which is not the description of a gradual-onset injury, and does not corroborate Galloway's claim that his rapid and repetitive motion at work caused his shoulder problems. The Commission discounted Dr. Rudder's causation opinion because it was based upon a history provided by Galloway, which the Com-

mission found did not conform to other evidence, including the testimony of Looney.

Other evidence supported the Commission's credibility finding. When Galloway took a leave of absence from Tyson, he filled out a form stating that the reason for the leave was not work related. He told his employer that he could have injured his shoulder in the yard. And while he claimed that his problems began in early 2007, Galloway did not fill out workers' compensation paperwork until December 2007. These factual findings necessarily included the Commission's credibility determinations. Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Ellison v. Therma Tru,* 71 Ark. App. 410, 417, 30 S.W.3d 769, 774 (2000). We defer to the Commission's findings on what testimony it deems to be credible. *Id.* at 417, 30 S.W.3d at 774. When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Id.* at 417, 30 S.W.3d at 774. The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Id.* at 417–18, 30 S.W.3d at 774.

The Commission also found that Galloway's shoulder problem did not arise out of his employment based on the medical evidence presented. Initially, in addition to degenerative changes (arthritis) found in Galloway's shoulder, Dr. Rudder thought that Galloway also had a torn rotator cuff. However, an MRI and the first surgery confirmed that this was not true. When Dr. Rudder performed the second surgery, he found a torn rotator cuff. Because Galloway had not worked for Tyson since

before the first surgery, the Commission found that the torn rotator-cuff injury could not have been caused by Galloway's work there.

Accordingly, we hold that the Commission's decision denying benefits is supported by substantial evidence.

Affirmed.

PITTMAN and HART, JJ., agree.