David GROTHAUS, Appellant

v.

VISTA HEALTH, L.L.C., and
Bridgefield Casualty Co.,
Appellees.

No. CA 10–795.

Court of Appeals of Arkansas.

Feb. 16, 2011.

Conrad Thomas Odom, Fayetteville, for appellant.

James A. Arnold II, Fort Smith, for appellee.

DOUG MARTIN, Judge.

Appellant David Grothaus brings this appeal from a decision of the Workers' Compensation Commission denying his claim for benefits. Grothaus was employed as a teacher by appellee Vista Health, L.L.C., a psychiatric facility for adolescents. On September 29, 2008, he was injured when a student attacked him in a classroom. Grothaus filed a claim for workers' compensation benefits, and his employer initially accepted his injuries as compensable. Subsequently, however, Vista Health controverted his claim, and Grothaus sought a hearing before an administrative law judge (ALJ). The ALJ found that Grothaus failed to meet his burden of proving that he suffered a compensable injury to his spine. In a two-to-one decision, the Workers' Compensation Commission affirmed the decision of the ALJ. Grothaus urges on appeal that the Commission's decision was in error.

After obtaining a bachelor's degree and teaching certificate in the late 1970s, Grothaus was unable to find a teaching job and eventually took a job with a fire department. After a few years as a firefighter and paramedic, he broke his neck and lower back while on the job. As a result of those injuries, Grothaus had surgeries to fuse the vertebrae in his neck and, a few years later, in his lower back. Unable to work as a result of those injuries, Grothaus began receiving disability. In 1994 or 1995, he went back to school, earned a second bachelor's degree, and began graduate school. Grothaus moved to Eureka Springs and began teaching.

In 2002, a student at the school in Eureka Springs attacked Grothaus and cracked both of his fusions. He sought medical

attention from Dr. Kresse, his family doctor, who referred him to Dr. Raben, who performed surgery on Grothaus's neck in May 2002. In September 2002, Grothaus had a plate placed in his neck and rods and bolts placed in his lower back. By 2005, Grothaus had returned to teaching. In April 2007, however, one of the screws in his neck came loose and had to be surgically repaired.

Grothaus took a teaching position at Vista Health in August 2008. On September 29, 2008, Grothaus was teaching one of his classes when one of his students began taking the metal levelers off of the bottom of his desk. Grothaus knelt beside the student to tell him that he could not do that, and the student threw one of the levelers at Grothaus. Grothaus caught it, but the student began throwing punches at his face. Grothaus fell backward, and the student started kicking him in the head. Within minutes, other school employees were able to get to the classroom and subdue the student, and Grothaus continued to teach for the rest of the day.

By the time Grothaus got home, he was "pretty sore," and by the next morning, he was "really, really sore" and had a "terrific headache." Despite the soreness in his neck and lower back, he went to work. By mid-morning, however, he was experiencing not only stiffness and soreness, but also spasms in his neck and back. Grothaus reported his situation to his supervisor, who referred him to Dr. Vandergriff. Dr. Vandergriff took x-rays of Grothaus's neck and recommended that he see a neurosurgeon; accordingly, Grothaus made an appointment for October 3, 2008, with Dr. Knox, who had done one of his previous surgeries.

Dr. Knox took Grothaus off work and ordered an MRI, which was performed on October 18, 2008. Grothaus was originally scheduled for a follow-up appointment with Dr. Knox, but the doctor's office lost the appointment and had to reschedule for a month later. Rather than waiting that long, however, Vista Health's insurance company arranged for Grothaus to see Dr. Blankenship, who prescribed a course of steroids and physical therapy.

Grothaus continued to experience stiffness and soreness, as well as numbness in his left arm and left foot. Eventually, Dr. Blankenship recommended surgery, but Grothaus felt more comfortable with Dr. Knox performing that surgery and requested a change of physician so he could return to Dr. Knox.[1] Dr. Knox agreed that surgery was advisable, but he felt that a different kind of procedure would be more appropriate.

On cross-examination at the hearing before the ALJ, Grothaus explained that his primary complaints since the September 2008 incident had been neck pain and numbness in his left arm and hand. Grothaus acknowledged that these were the same symptoms about which he had complained prior to the September 2008 injury, although he stated that there were more, and more intense, symptoms. He also agreed that the post-September 2008 symptoms of pain in his lower back and left leg were the same as the symptoms he had experienced prior to that time.

On the basis of Grothaus's testimony and the medical records introduced at the hearing, the ALJ determined that Grothaus had not demonstrated that he had suffered a compensable injury. The ALJ first noted that Grothaus had "an extensive history of prior low back and neck

1. It was at this point that Vista Health began controverting the compensability of Grothaus's injuries.

complaints before September 29, 2008," including three surgical procedures on his cervical spine and two surgical procedures on his lumbar spine. The ALJ also pointed to several non-work-related incidents in which Grothaus had injured his neck, including a slip-and-fall in November 2007 and an accident in which a ceiling fan fell on his head in July 2008; between those two incidents, Grothaus's cervical-thoracic fusion had been fractured.

Further, the ALJ observed that only one physician had examined Grothaus's medical records from both before and after the September 29, 2008 incident. Vista Health offered a report dated July 13, 2009, by Dr. Hronas, a board-certified radiologist, who stated that he compared an MRI of Grothaus's lumbar spine taken on June 2, 2006, with an MRI taken on October 13, 2008, and a CT myelogram taken on January 13, 2009. Dr. Hronas found that the findings regarding Grothaus's lumbar spine were "stable and unchanged from the three examinations of the lumbar spine." In addition, Dr. Hronas compared a cervical MRI taken on July 18, 2008, to a cervical MRI taken on October 13, 2008, and a CT myelogram dated January 13, 2009; he concluded that "the three [cervical-spine] studies show similar findings with no change from one examination to the next." Dr. Hronas's report concluded as follows:

> After the injury on 9–29–08, [Grothaus] had similar clinical findings and symptoms [as had been previously reported after his earlier injuries] with the only difference being an apparent increase in the magnitude of the subjective complaints, resulting in subsequent treatment with cervical epidural steroid injec-

tions as before the injury. Based on the clinical history and MRI findings prior to and after the incident on 9–29–08, it appears there was no significant change clinically or with medical imaging after the incident.

The ALJ found that Dr. Hronas's opinion was credible and entitled to great weight; accordingly, the ALJ found that Grothaus had failed to offer medical evidence supported by objective findings establishing a new injury. As such, the ALJ concluded that Grothaus "failed to meet his burden of proving by a preponderance of the evidence that he suffered a compensable injury to his cervical and/or lumbar spine as a result of the incident on September 29, 2008." In an opinion filed on May 18, 2010, the Commission affirmed and adopted the ALJ's findings.[2] Grothaus filed a timely notice of appeal on June 14, 2010, and now argues for reversal that the Commission's decision is not supported by substantial evidence.

Typically, on appeal to this court, we review only the decision of the Commission, not that of the ALJ. *Daniels v. Affiliated Foods Sw.*, 70 Ark.App. 319, 17 S.W.3d 817 (2000). In this case, the Commission affirmed and adopted the ALJ's opinion as its own, which it is permitted to do under Arkansas law. *Death & Permanent Total Disability Trust Fund v. Branum*, 82 Ark.App. 338, 107 S.W.3d 876 (2003). Moreover, in so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *Id.* Therefore, for purposes of our review, we consider both the ALJ's

2. One commissioner dissented, contending that Grothaus had established that the September 29, 2008 incident aggravated a preexisting condition. The dissent also suggested that the ALJ had "confuse[d] the 'objective finding' element with the 'causal connection element'" of compensability, asserting that objective medical evidence is not essential to establish a causal relationship between the injury and the claimant's work.

order and the Commission's majority order.

In appeals involving claims for workers' compensation, our court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Galloway v. Tyson Foods, Inc.*, 2010 Ark. App. 610, at 5, 378 S.W.3d 210, 213. Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Galloway*, 2010 Ark.App. 610, at 5, 378 S.W.3d at 213. The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm. *Id.* Where the Commission denies a claim because of the claimant's failure to meet his burden of proof, the substantial evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief. *Id.*

Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission, and when there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Neal v. Sparks Reg'l Med. Ctr.*, 104 Ark.App. 97, 102, 289 S.W.3d 163, 167 (2008). The Commission is not required to believe the testimony of the claimant or any other witnesses, but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Id.*

An employer takes an employee as he finds him, and employment circumstances that aggravate preexisting conditions are compensable. *Heritage Baptist*

*Temple v. Robison*, 82 Ark.App. 460, 120 S.W.3d 150 (2003). An aggravation of a preexisting noncompensable condition by a compensable injury itself is compensable. *Oliver v. Guardsmark*, 68 Ark.App. 24, 3 S.W.3d 336 (1999). An aggravation, being a new injury with an independent cause, must meet the requirements for a compensable injury. *Ford v. Chemipulp Process, Inc.*, 63 Ark.App. 260, 977 S.W.2d 5 (1998). Arkansas Code Annotated section 11–9–102(4)(A)(i) (Supp.2009) defines a compensable injury as

> [a]n accidental injury causing internal or external physical harm to the body ... arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence[.]

A compensable injury must be established by medical evidence supported by objective medical findings. Ark.Code Ann. § 11–9–102(4)(D) (Supp.2009). "Objective findings" are those findings that cannot come under the voluntary control of the patient. Ark.Code Ann. § 11–9–102(16). Thus, to be compensable, Grothaus's alleged aggravation of a preexisting condition must itself have been a compensable injury—that is, it must be established by medical evidence supported by objective findings.

In this case, as discussed above, Grothaus had an extensive history of problems with his cervical and lumbar spine. In April 2007, he underwent an anterior cervical diskectomy and posterior cervical fusion; although he did well after these procedures, he continued to complain of back pain and was referred to Dr. Ennis for nerve block injections. In November 2007, Grothaus slipped on a mossy embankment and "torqued" his neck; x-rays

taken at that time showed a pseudoarthrosis at the bottom level of the fusion site with a fractured screw. Although that situation was resolved with a bone stimulator and his neck was "markedly improved" by the time he saw Dr. Knox in April 2008, he continued to have significant back and leg pain at that time and sought additional pain management from Dr. Ennis throughout May 2008. In July 2008, Grothaus saw Dr. Knox again for a "small accident with a ceiling fan that clunked him on the head the first of June and reaggravated [his neck] pain." A July 15, 2008 x-ray revealed that this incident with the ceiling fan "broke the underlying residual fusion at the cervical/thoracic junction."

When Grothaus was examined by Dr. Vandergriff on September 30, 2008, after the work-related incident, x-rays of his cervical spine, lumbar spine, left hip, and skull "showed no acute fractures or dislocations except for the fact that it looks like the hardware of the C-spine has a broken screw." This was clearly not a new objective medical finding, as the July 2008 x-ray had revealed the broken screw. An October 3, 2008 x-ray report by Dr. Knox also showed "previous extensive reconstructive spine surgery with anterior cervical diskectomy and fusion at C5–6 and C6–7, with posterior cervical fusion, lateral mass screw, and rod formation at C5, C6, and C7 with pedicle fixation at T1 . . . . There is a fractured screw at T1." Again, these are not new objective findings.

There was only one report offered into evidence that directly compared Grothaus's pre-September 2008 and post-September 2008 medical records—that of Dr. Hronas. As noted above, Dr. Hronas opined, within a reasonable degree of medical certainty, that "there was no significant change clinically or with medical imaging after the incident." Because there was no medical evidence supported by objective findings to demonstrate that Grothaus sustained a compensable injury as a result of the September 29, 2008 incident, the Commission's decision was supported by substantial evidence. *See Mooney v. AT & T*, 2010 Ark. App. 600, 378 S.W.3d 162 (where MRIs taken in 2001 and 2005—before and after alleged work-related injury-showed "no interval changes in moderate to severe central stenosis at L4–5 secondary to disc bulging," the lack of significant changes between the MRIs supported the ALJ's conclusion that the 2005 MRI did not establish a new injury or an aggravation). Accordingly, we affirm the decision of the Commission.

Affirmed.

VAUGHT, C.J., and GLADWIN, J., agree.