

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-15-909

| | |
|---|---|
| J.B. HUNT TRANSPORT SERVICES INC. AND NEW HAMPSHIRE INSURANCE COMPANY | Opinion Delivered: May 25, 2016 |
| APPELLANTS | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G405713] |
| V. | |
| GREGORY HOLLINGSWORTH APPELLEE | AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Appellants J.B. Hunt Transport Services Inc. and New Hampshire Insurance Company appeal the decision of the Arkansas Workers' Compensation Commission (the Commission) finding that appellee Gregory Hollingsworth was entitled to additional medical treatment by Dr. Luke Knox, including a cervical discectomy and fusion, and temporary-total-disability (TTD) benefits from October 21, 2014, to a date yet to be determined. On appeal, appellants argue that the Commission's decision was not supported by substantial evidence and that the decision should be reversed. We disagree and affirm.

On July 14, 2014, Hollingsworth was driving a truck for J.B. Hunt when he was involved in a rollover accident. J.B. Hunt accepted the claim as a compensable injury but challenged whether he was entitled to additional medical treatment in the form of surgery

recommended by Hollingsworth's treating neurosurgeon, Dr. Knox, and also whether Hollingsworth was entitled to TTD benefits pending the neck surgery and recovery.

At the time of the accident, Hollingsworth was fifty-four years old. Though he had been a truck driver for thirty years, he had worked for J.B. Hunt for only less than a year. He was hired to drive live birds to and from plants in Northwest Arkansas and Southwest Missouri. When Hollingsworth began employment with J.B. Hunt in December 2013, he passed medical, lifting, and agility tests, including lifting eighty pounds to his nose. While on the job on July 14, 2014, the truck he was driving rolled over as he was leaving a farm. The incident happened after Hollingsworth had passed another J.B. Hunt truck on the same road; the other driver was arriving at the farm as Hollingsworth was leaving.

Hollingsworth was immediately taken to the emergency room at Cox Hospital in Monett, Missouri. The emergency room records reflect that he suffered face, neck, and scalp lacerations. He also suffered a broken nose and had bruises on his arms and knee. His injuries required five staples behind his right ear and a stitch under his nose. The emergency room doctor noted possible cervical problems, but CT scans done at the hospital reflected probable moderate degenerative changes at the cervical level. The doctor also noted some moderate degenerative changes at C1–2 before Hollingsworth was discharged on July 15.

Hollingsworth testified that he had intense pain after the accident. He stated that he could not bend his neck to the right or left and that bending his neck backwards caused him severe and excruciating pain. Hollingsworth testified that he had no neck pain or issues prior to the wreck, and that testimony was corroborated by the fact that he had never required medication, treatment, or any kind of x-ray or imaging study on his neck before July 14,

2014. J.B. Hunt terminated Hollingsworth on July 28, 2014; he has not worked since the accident.

Hollingsworth was seen by Dr. Rebecca Lewis, a Doctor of Osteopathic Medicine (DO), at Quick Care Clinics in Siloam Springs, Arkansas, on July 22, 2014. Dr. Lewis noted that Hollingsworth's neck was tender and that his ribs hurt but there was no fracture. She removed the staples from his healed scalp laceration. Dr. Lewis also noted some cervical whiplash and spasms in his neck and diagnosed him with having contusions and bruising on his left thigh. Dr. Lewis gave Hollingsworth a Medrol dose pack and a refill of pain medication for the rib pain.

On August 4, 2014, Hollingsworth returned to Dr. Lewis, who noted that his rib pain was much improved and that he had been terminated by J.B. Hunt following an investigation of the wreck. Dr. Lewis examined Hollingsworth and noted that Hollingsworth's reaction was "inappropriate pain response to gentle touch of the cervical spine." Hollingsworth told Dr. Lewis that the rotation of the neck to the right was limited as well. All of his other injuries appeared to have resolved. Dr. Lewis diagnosed an increase in right–sided neck pain and right–upper–arm pain, along with inappropriate pain response to gentle touch of the cervical spine. She ordered an MRI to help clarify any of the complaints and also noted that there were chronic, ongoing degenerative changes in the neck that had been there long before the accident.

The MRI was conducted on August 13, 2014. The results, as read by the radiologist, reflected only chronic degenerative changes and no acute changes. After the MRI and an examination on August 18, 2014, Dr. Lewis recommended that Hollingsworth seek the

attention of a neurosurgeon to help him gain insight into his degenerative conditions. She opined that he could go back to work with no restrictions and that he suffered no permanent impairment due to the work-related injury.

In October 2014, Hollingsworth saw neurosurgeon Dr. Luke Knox, who examined Hollingsworth and reviewed the previous tests. In his deposition, Dr. Knox testified that he agreed that the prior x-rays, CT scan, and MRI administered to Hollingsworth found only long-standing and chronic degenerative issues in his cervical spine. Dr. Knox recommended a myelogram test, which was conducted on January 16, 2015. The radiologist who read the myelogram found the test negative for evidence of disc protrusion or canal stenosis and found mild degenerative disc disease at C5-6 and C6-7. Dr. Knox disagreed slightly, finding that the myelogram was positive for showing extrinsic compression of the nerve root.

J.B. Hunt argued that Hollingsworth suffered from a preexisting condition, but the ALJ found, "[h]owever, the fact that the claimant had no neck pain or issues prior to July 14, 2014 cannot be overlooked. If Dr. Lewis' records and findings are to be believed and the claimant suffered degenerative neck issues, it is certainly possible that the July 14, 2014 accident may have aggravated those issues. Such an aggravation would be compensable under the law."

The full Commission affirmed and adopted the ALJ's opinion in a 2–1 decision. J.B. Hunt filed a timely notice of appeal from the Commission's opinion, which is now before this court.

The full Commission's decision is to be affirmed when there is substantial evidence on record to support the Commission's finding. *Express Human Res. III v. Terry*, 61 Ark.

App. 258, 968 S.W.2d 630 (1998). In appeals involving claims for workers' compensation, this court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Leach v. Cooper Tire & Rubber Co.*, 2011 Ark. App. 571. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.*

We defer to the Commission's findings on what testimony it deems to be credible, and the resolution of conflicting evidence is a question of fact for the Commission. *Hargis Transp. v. Chesser*, 87 Ark. App. 301, 190 S.W.3d 309 (2004). The Commission has authority to accept or reject medical opinion and to determine its medical soundness and probative force. *Oak Grove Lumber Co. v. Highfill*, 62 Ark. App. 42, 968 S.W.2d 637 (1998). Credibility questions and the weight to be given to witness testimony are within the Commission's exclusive province. *Pack v. Little Rock Convention Ctr.*, 2013 Ark. 186, 427 S.W.3d 586.

The issue is not whether we might have reached a different decision or whether the evidence would have supported a contrary finding; instead, we affirm if reasonable minds could have reached the conclusion rendered by the Commission. *Id.* Typically, this court reviews only the decision of the Commission, not that of the ALJ; however, when the Commission affirms and adopts the ALJ's opinion as its own, as it did here, we consider both the ALJ's decision and the Commission's opinion. *Ozark Nat. Food v. Pierson*, 2012 Ark. App. 133, at 9, 389 S.W.3d 105, 110.

J.B. Hunt argues that substantial evidence does not exist to support the Commission's decision. As a workers'-compensation claimant, Hollingsworth had, at all times, the burden

of establishing the compensability of his injury by a preponderance of the evidence. *Maxwell v. Carl Bierbaum, Inc.*, 48 Ark. App. 159, 893 S.W.2d 346 (1995). It was Hollingsworth's burden to establish that the additional medical treatment recommended by Dr. Knox was causally related to his prior compensable injury. J.B. Hunt maintains that while there is no question that Hollingsworth was involved in a vehicular accident while on the job, the evidence presented fails to support a finding that Hollingsworth proved that the additional medical treatment recommended by Dr. Knox arose from the accident on July 14, 2014.

J.B. Hunt emphasizes several pieces of evidence that tend to detract from Hollingsworth's case for additional medical treatment. These include CT scan results at the initial emergency room visit in that were read as chronic, rather than acute disc loss and spondylosis at C5-6 and C6-7. J.B. Hunt also recounts Dr. Lewis's follow-up visit where she suggested Hollingsworth had an inappropriate pain response when she applied gentle feather-touch palpation to the cervical spine. But, as Hollingsworth argues, Dr. Lewis also noted spasms in his neck and referred him to a neurosurgeon. Hollingsworth contends that J.B. Hunt minimizes and qualifies all of Dr. Knox's findings and opinions in an attempt to discount them. We agree with Hollingsworth that in doing so, J.B. Hunt ignores the Commission's role in weighing and resolving conflicting medical evidence and the jury-verdict force to be given to such Commission decisions on appellate review.

Hollingsworth highlights evidence that supports the Commission's decision, including the fact that before the accident he had never been prescribed medicine or had an x-ray, an MRI, or a myelogram for his neck. He testified that he could not perform the job of a truck driver in his current condition and that his condition had not gotten any better

since the accident. He has not worked since the accident and he wants to have surgery as recommended by Dr. Knox. Hollingsworth testified that Dr. Knox told him "that beyond a shadow of a doubt that [his] pain is caused from the accident."

Dr. Knox was deposed twice by J.B. Hunt's attorney in January 2014. He testified that Hollingsworth's accident in July was causing his symptoms and believed it relevant that Hollingsworth had never seen a chiropractor or doctor for neck or arm pain in the past. Dr. Knox testified that the location where Dr. Lewis noted paravertebral spasm on July 22, 2014, was in the back of the neck in the area that Dr. Knox believed Hollingsworth to have a herniated disc. Dr. Knox stated that the results of the Spurling Maneuver in Hollingsworth's physical exam were supported by the results of the myelogram and consistent with his complaints of pain.

Here, the Commission's decision to award Hollingsworth additional medical treatment is supported by substantial evidence. There is a clear opinion, to a reasonable degree of medical certainty, by Hollingsworth's treating neurosurgeon of a causal connection. The doctor's opinion is supported by objective findings—a myelogram. It is also supported by the positive Spurling Maneuver test and his evaluation of Hollingsworth's consistent complaints of pain and range-of-motion limitations. Even Dr. Lewis, who believed Hollingsworth had an exaggerated pain response, noted that he had muscle spasms in his neck. Our supreme court has held that muscle spasms constitute objective findings under workers'-compensation statutes. *See Cont'l Exp., Inc. v. Freeman*, 339 Ark. 142, 146, 4 S.W.3d 124, 126 (1999).

We hold that the Commission's ruling that Hollingsworth is entitled to TTD during his healing period from October 21, 2014, to a date yet to be determined is also supported by substantial evidence. Dr. Knox's opinion that it is fair to have Hollingsworth off work right now while "we're trying to delineate the exact injury and treatment" is unrebutted. Further, the factors in this case are supported by significant facts that (1) Hollingsworth was in a serious rollover wreck; (2) he passed several tests, including medical, lifting, agility, and driving in heavy traffic prior to being hired by J.B. Hunt less than a year before the wreck; and (3) in his long history of being a truck driver and engaging in strenuous physical work, he had never required any medical treatment for neck pain. These facts, coupled with the medical evidence presented, are sufficient to support the substantial-evidence standard of review.

It is well settled that the Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury trial. *See St. Edward Mercy Med. Ctr. v. Chrisman*, 2012 Ark. App. 475, 422 S.W.3d 171; *Poulan Weed Eater v. Marshall*, 79 Ark. App. 129, 84 S.W.3d 878 (2002). The Commission is to determine the credibility and weight to be accorded each witness's testimony. *Arbaugh v. AG Processing, Inc.*, 360 Ark. 491, 202 S.W.3d 519 (2005). In the instant case, the ALJ and the Commission did just that and relied on the substantial evidence presented to find that Hollingsworth was entitled to additional medical treatment and TTD benefits.

This court views the evidence in the light most favorable to the Commission's findings, and we cannot say that reasonable minds could not reach the result found by the Commission. Therefore, we affirm.


Affirmed.

GLOVER and HIXSON, JJ., agree.

*Dover Dixon Horne, PLLC*, by: *Joseph H. Purvis* and *Monte D. Estes*, for appellants.

*Cullen & Co., PLLC*, by: *Tim Cullen*, for appellee.