

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-17-175

HELEN M. BITTLE
                                    APPELLANT

V.

WAL-MART ASSOCIATES, INC.,
AND CLAIMS MANAGEMENT, INC.
                                    APPELLEES

**Opinion Delivered:** November 29, 2017

APPEAL FROM THE ARKANSAS
WORKERS' COMPENSATION
COMMISSION
[NO. G504247]

AFFIRMED

## BART F. VIRDEN, Judge

Appellant Helen Bittle appeals from the decision of the Arkansas Workers' Compensation Commission (Commission), affirming and adopting the administrative law judge's (ALJ) opinion, finding that Bittle did not prove that she sustained compensable injuries to her upper and lower back, right hip, and coccyx on April 6 and 12, 2015, arising out of and in the course of her employment with appellee Wal-Mart Associates, Inc. (Wal-Mart). Bittle argues that there is no substantial evidence to support the Commission's decision.[1] We affirm.

---

[1]Arkansas Supreme Court Rule 4-2(a)(5)(B) provides that the abstract shall be an impartial condensation of the transcript, and Rule 4-2(a)(8)(A)(i) provides that the addendum must include all exhibits concerning the order, judgment, or ruling challenged on appeal. Bittle's counsel abstracted only testimony that was favorable to Bittle and included in the addendum only six medical records that primarily support Bittle's argument. Noticeably absent is an independent medical examination relied on by the Commission. The only reason this court is not ordering rebriefing is because Wal-Mart provided a supplemental abstract and addendum, which is permitted by Rule 4-2(b)(1).

## I.  *Compensable Injury*

"Compensable injury" means "an accidental injury causing internal or external physical harm to the body . . . arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is 'accidental' only if it is caused by a specific incident and is identifiable by time and place of occurrence." Ark. Code Ann. § 11-9-102(4)(A)(i) (Supp. 2015). A compensable injury must be established by medical evidence supported by objective findings. Ark. Code Ann. § 11-9-102(4)(D). "Objective findings" are those findings that cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16)(A)(i). Section 11-9-102(4)(E)(i) provides that the employee has the burden of proving a compensable injury by a preponderance of the evidence.

With regard to an aggravation, an employer takes an employee as it finds him or her, and employment circumstances that aggravate preexisting conditions are compensable. *Vaughn v. Midland Sch. Dist.*, 2012 Ark. App. 344. A preexisting disease or infirmity does not disqualify a claim if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the disability for which workers' compensation is sought. *Id.* An aggravation is a new injury resulting from an independent incident, and being a new injury with an independent cause, it must meet the definition of a compensable injury in order to establish compensability for the aggravation. *Id.*

## II.  *Hearing Testimony*

Bittle testified that on April 6 and 12, 2015, she was working in the receiving department at Wal-Mart as an inventory control specialist. She described her job duties as

SLIP OPINION

pulling merchandise off the shelves and putting it out for the departments to place on the floor. On April 6, 2015, she said that she was pulling a pallet down for an employee when her shoe hung on a pallet nail. She said that this caused her to release a button on the machine that she was using and that the rollback from the machine pushed her flat on her back. Bittle said that she felt pain in her chest, upper back, and right hip. She explained that her walkie talkie had been on her right hip and that she must have fallen on it. She said that a Coca-Cola representative had helped her up and that an assistant manager had helped her get to the human-resources (HR) office. Bittle testified that she filled out an incident report but did not ask to see a doctor because she "wasn't sure what was hurting. [She] just wanted to make sure that everything was okay." Bittle testified that she had a bruise on her right hip the next day. Although Bittle said that the pain from her injuries had gotten progressively worse, she worked her normal job duties until April 12, 2015.

Bittle testified that on April 12, 2015, she pulled a product off the shelf to take to a cart but dropped it. She said that when she bent over to pick up the product, the pain was so severe in her lower back that she had to call an assistant manager to help her get up. She stated that the manager and another employee put her in a wheelchair and took her to the HR office to fill out another incident report. Bittle said that, while there, she suffered a muscle spasm such that she had to lie down on the floor. Although she had asked to see a doctor that day, her employer persuaded her to wait until the following day.

To summarize Bittle's medical visits, the evidence shows that she first saw Dr. Michael Lack on April 13, 2015. Dr. Lack later recommended physical therapy. Bittle had six physical-therapy sessions, which she said had helped her until the therapist tried to

manipulate her leg, which caused her to suffer an immediate onset of pain. Bittle did not return to physical therapy. Bittle's employer directed her to see Dr. Vestal Smith, and she saw him on three occasions. The employer hired a "nurse case manager," who recommended that Bittle have an independent medical examination (IME) by Dr. J. Justin Seale. Bittle also intermittently saw Amy Johnson, an advanced practice nurse, who treated her for osteoporosis, which was discovered through x-rays taken after her second fall.

In her testimony at the hearing, Bittle denied having had any problems with her back, shoulders, and hips, but she acknowledged having had neck problems resulting from a motor-vehicle accident in 2002. Bittle explained that her husband had been driving when the driver's side door was struck by another vehicle and that she, a passenger in the car, had suffered whiplash. On cross-examination, Bittle conceded that she had filed a lawsuit against the other driver, but she expressed surprise that the complaint had alleged injuries to her cervical spine, thoracic spine, lumbar spine, shoulders, right hip and leg, and head.

Bittle testified that she resigned from her job at Wal-Mart in November 2015. An exit interview shows that she did so for health reasons. Bittle stated that her back pain had not decreased but had not gotten worse. She said that she was unable to bend and pick up an item; that she could not walk very far; and that she could not even lift a gallon of milk. Just after this testimony, Bittle was shown a video from Wal-Mart, and she identified herself and her husband grocery shopping. She agreed that the video showed her pulling something down from an upper shelf, picking up a case of soda and moving it in the cart, placing a gallon of milk on the conveyor belt, and loading a bag containing two two-liter bottles of soda into her cart. Bittle explained, "Sometimes I can pick something up and sometimes I

can't. That particular day, I could." Lisa Lawson, a protection manager at Wal-Mart, testified that the events depicted on the video occurred on November 9, 2015. She had seen Bittle in the store that day: "[S]he was checking out, she was bent over her cart lifting something[,] it appeared she was looking at me[,] and she stopped doing whatever she was doing."

Wendy Trozzi, a registered nurse who had been retained by Wal-Mart as a "nurse case manager" on Bittle's file, testified that she acted as a liaison, facilitated and coordinated treatment, appointments, and tests recommended by doctors, and gathered medical records. Trozzi stated that she had gotten the records from Bittle's physical therapist and had seen no notation of an incident involving her hip. Trozzi said that she then contacted Bittle's physical therapist and that he denied any such incident. According to Trozzi, the physical therapist said that Bittle had been doing "quite well" and that he had not thought she needed any more physical therapy.

### III. *Medical Records*

Dr. Lack saw Bittle on April 13, 2015, for a "new work-related injury" described as lumbar sprain/strain. He had released her to return to work but had restricted her from bending, twisting, and lifting or carrying more than five pounds. Bittle saw Dr. Lack again on April 20, 2015. He reported that an x-ray had revealed no acute findings; he noted that she had osteoporosis; and he recommended physical therapy. A physical-therapy record dated April 28, 2015, indicates that Bittle reported that her overall condition had improved; she rated her pain as a one on a scale from one to ten; and she said that her low back was still sore. Bittle saw Dr. Lack on June 1, 2015, and he reported that Bittle had said that her pain level was "much worse" and that she told him she had been having difficulty working.

He also noted that her physical examination revealed no spasm of the back. On June 3, 2015, a bone-density screening revealed that Bittle's results fell in the osteopenic range. On June 15, 2015, Bittle underwent a MAM/Bone Densitometry, which revealed that she had "mild lumbar lavoscoliosis" and that she was "osteoporotic and at high fracture risk."

In a report dated June 29, 2015, Dr. Smith noted that an MRI of Bittle's lumbar and sacral spine was "unremarkable" but that she did have a small central disc protrusion at L5-S1. Bittle had described some tingling and tenderness over her tailbone area, so Dr. Smith had x-rayed her right hip and had gotten a "cone down view of the coccyx." The radiologist reported "unremarkable two views of the right hip," and his impression was "45 degree angle of the coccyx with respect to the sacrum. This could be related to old trauma. A discrete focal acute cortical disruption is not seen." Bittle saw Dr. Smith on August 3, 2015, and he reported, "We did have x-rays done of the coccyx after her last visit, and there is a 45 degree angle of the coccyx with respect to the sacrum. Essentially it was felt that this would displace, but there was no specific fracture noted otherwise."

Bittle saw Dr. Justin Seale on August 31, 2015, for an IME. Dr. Seale's assessment was low-back pain and right buttock pain with mild, preexisting L5-S1 degenerative disc disease. He noted that an x-ray of Bittle's lumbar spine had revealed no abnormalities; that x-rays of her coccyx were "fairly poor quality" but had appeared normal; and that an MRI of the lumbar spine had revealed "very mild disc desiccation at L5-S1 with mild bulging and no obvious disc herniation." Dr. Seale further wrote in his report,

1. Her diagnosis from a spine standpoint is low back pain with pre-existing L5-S1 degenerative disc disease.
   . . . .

3.  I do not see any objective findings of injury on x-rays from 6/30/15.
    . . . .

5.  There has been no change in x-rays taken today versus x-rays taken [back] in June.

6.  I do not feel physical therapy session during manipulation of the hip would cause any type of objective injury.

7.  Her bone density test in June resulting in the diagnosis of osteopenia has no direct correlation with her work-related injury thus the use of Forteo.

8.  I do not believe her distal sacrum or coccyx is directly related to her work injury. This is not where her pain is located.

9.  She does not have objective findings on her MRI or x-rays of the lumbar spine, sacrum, and coccyx [sic] are related to her work injury.

10. Currently I do not see any spine-related objective findings that would necessitate the use of Cymbalta or other medications.
    . . . .

Dr. Seale found that Bittle was at maximum medical improvement and released her to return to work with no restrictions. Dr. Seale did, however, order an MRI of Bittle's pelvis and right hip to rule out internal derangement. On September 30, 2015, he reported that the MRI had revealed no acute findings and only "mild articular wear and tear of the hip."

IV. *Commission's Opinion*

The Commission found that Bittle failed to prove that she sustained compensable work-related injuries on April 6 and 12, 2015, because there were no objective medical findings to support such conclusion. The Commission noted the lack of any notation in the medical records of muscle spasms and contusions observed by any of Bittle's doctors. The Commission further found that Bittle's credibility was "suspect" given her testimony that



she could not lift a gallon of milk when store video showed her lifting such without apparent difficulty.

## V. *Standard of Review*

Typically, on appeal to this court, we review only the decision of the Commission, not that of the ALJ. *Grothaus v. Vista Health, LLC*, 2011 Ark. App. 130, 382 S.W.3d 1. Here, the Commission affirmed and adopted the ALJ's opinion as its own, which it is permitted to do under Arkansas law. *Id.* Moreover, in so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *Id.* Therefore, for purposes of our review, we consider both the ALJ's order and the Commission's majority order. *Id.*

In appeals involving claims for workers' compensation, the appellate courts view the evidence in the light most favorable to the Commission's decision and affirm the decision if it is supported by substantial evidence. *Nucor Corp. v. Rhine*, 366 Ark. 550, 237 S.W.3d 52 (2006). Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm. *Id.* Where the Commission denies a claim because of the claimant's failure to meet his or her burden of proof, the substantial-evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief. *Id.*

Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Hickman v. Kellogg, Brown*

SLIP OPINION

*& Root*, 372 Ark. 501, 277 S.W.3d 591 (2008). The Commission is not required to believe the testimony of the claimant or any other witness but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Id.* When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Id.* The Commission has the authority to accept or reject medical opinion and to determine its medical soundness and probative force. *J.B. Hunt Transp. Servs. Inc. v. Hollingsworth*, 2016 Ark. App. 279, 497 S.W.3d 197.

## VI. *Discussion*

Bittle argues that, contrary to the Commission's opinion, she did have objective findings of compensable injuries, e.g., a bruise on her right hip and a muscle spasm. She contends that she also had "mild lumbar lavoscoliosis" and osteoporosis, which were asymptomatic prior to her falls. She maintains that an MRI showed a disc protrusion at L5–S1 and that a study of her coccyx revealed that it was positioned at a forty-five degree angle. Bittle further argues that Dr. Smith reported that she had experienced decreased sensation in her lateral right extremity.

As a preliminary matter, the video from Wal-Mart damaged Bittle's credibility, and this court does not second-guess credibility determinations made by the Commission. *Hickman*, *supra*. The Commission was not required to believe Bittle's self-serving testimony that she sustained a bruise after her first injury and suffered a muscle spasm soon after her second injury. Although both would have constituted objective medical findings, there was no notation in the medical records that any medical staff observed bruising or muscle spasms. Also, Bittle did not present the testimony of any lay witnesses who could corroborate the

existence of bruising or muscle spasms. Moreover, although Bittle described experiencing numbness of her right leg to Dr. Smith, who noted that "[t]here does appear to be decreased sensation," there is no indication that Dr. Smith did any testing to confirm Bittle's report. As such, decreased sensation was nothing more than a subjective complaint, which is insufficient, standing alone, to support Bittle's claim, especially given the Commission's finding that Bittle was not credible. *Cf. Emergency Ambulance Servs. v. Pritchard*, 2016 Ark. App. 366, 498 S.W.3d 774 (affirming Commission's determination of permanent-impairment rating based on several objective medical findings in addition to claimant's credible account of pin-prick testing). The Commission was entitled to rely on, and give greater weight to, the opinion of Dr. Seale, who had reviewed various x-rays and MRIs but reported no objective medical findings related to Bittle's April 2015 injuries or an aggravation of any preexisting condition.

Next, Bittle asserts that the facts of her case are similar to those in *Waste Management & Gallagher Bassett Services, Inc. v. Cook*, 2015 Ark. App. 159, and *Hollingsworth*, *supra*. While Bittle relies on these cases, she does not explain in what respect they are similar, and we find them readily distinguishable. The most obvious difference is that, whereas the Commission denied relief to Bittle, the Commission granted relief to the claimants in *Cook* and *Hollingsworth*. Also, the Commission found that there were objective medical findings in *Cook* (the claimant had an annular tear in his lumbar spine that was not present before his work-related injury) and *Hollingsworth* (the Commission relied on a doctor's report that the claimant suffered muscle spasms of the neck and contusions to his thigh).

Because there were no objective medical findings to support Bittle's claim that she sustained work-related injuries or an aggravation of a preexisting condition, we hold that the Commission's opinion displays a substantial basis for the denial of relief.

Affirmed.

KLAPPENBACH and BROWN, JJ., agree.

*Goldberg & Dohan*, by: *Andy L. Caldwell*, for appellant.

*Ledbetter, Cogbill, Arnold & Harrison, LLP*, by: *R. Scott Zuerker* and *Joseph Karl Luebke*, for appellees.