BRANDON J. HARRISON, Judge
This workers'-compensation appeal asks us to decide whether substantial evidence supports the Arkansas Workers' Compensation Commission's decision that an Arkansas Highway and Transportation Department employee's weed eating activities did not equate to a rapid-repetitive movement as workers'-compensation law uses the term.
Dale Carlat is a fifty-four-year-old man who has worked for the highway department since 2002. In October 2014, he complained of a sharp pain in his shoulder but did not report it as a work-related injury until March 2015. In February 2015 a MRI showed several tears and degenerative changes in the right shoulder. Surgery was an option, Carlat chose it, and the surgery was completed in May 2015. Shoulder problems continued postsurgery. Medical records note that Carlat complained that his shoulder pain was related to using a weed eater. Carlat sought benefits related to the shoulder injury and the administrative law judge (ALJ) denied them. He appealed to the Commission, which also denied them, concluding that he did not prove a compensable gradual-onset injury to his right shoulder. The lapse in proof, said the Commission, was that Carlat did not show that the weed eating activity equated to a rapid or repetitive movement. Carlat takes issue with that decision.
Before the ALJ, Carlat testified that he was a maintenance aide III or lead-man position for the highway department. His duties included inspecting and maintaining equipment, driving his crew, supervising the work of his subordinates, and weed eating. Carlat testified that weed eating *516 was a "second duty" to his other tasks and that it only occurred during mowing season, which ran from May through November. According to Carlat, during mowing season, he and a four-or five-member crew worked ten-hour days, four days a week. Carlat said he would go ahead of his crew to start weed eating around mailboxes, culverts, and cross drains. He was "in and out" of the truck all day. He would swing the weed eater back and forth; the crew would average eighteen miles a day.
Bradley English, a highway department employee, testified that he worked as a grade 5 single-axle truck driver running a "five-footer," or a hydraulic sickle, on the mowing crew. English said that Carlat was his supervisor in 2014 on the mowing crew and that Carlat, when weed eating, would get the weed eater out of the truck, run it around the signs, mailboxes, culverts, and cross drains, then put the weed eater back on the truck and move down the road about every ten yards. English testified that Carlat would do this about one hundred times a day on an average shift and possibly more. He said that cross drains would take about five minutes of continuous weed eating but that the length of time depended on the slope and density of the grass or other vegetation.
Barry Clark, an area maintenance supervisor for the highway department, said that Carlat's maintenance III position entailed being responsible for getting the crew out on the job, getting the equipment ready, overseeing the crew, and doing daily maintenance. During mowing season, additional responsibilities included setting out roadside warning signs, assisting the crew in any repairs, and "just kind of doing some weed eating." He said that the crew leader will drive the truck, get out, weed eat, and then get back in the truck and drive to the next point. According to Clark, a mowing crew would spend an average of eight hours mowing in a ten-hour day and averaged between five and fifteen miles a day. He testified that a crew leader spends anywhere from two to three hours between starting mowing in the morning and lunchtime running the weed eater. But the time varied based on how close together the signs are on the road, how many mailboxes there were, and whether the crew was working in a rural or urban area. He agreed that the process was "weedeating ... for only a few minutes and then you stop weedeating and come back to the truck."
The Commission rejected Carlat's claim for the following reasons:
In the present claim, the claimant contends that he sustained a gradual-onset shoulder injury as a result of weedeating. While, arguably, the task of weedeating is, to some degree, repetitive, the claimant failed to prove that his performing this task was repetitive as required by our statutory provisions for establishing a gradual-onset injury. More specifically, the claimant testified that during the mowing season (or, roughly from May to November) he was required to conduct various work-related duties in his position as Maintenance Aide III. These duties, as verified by Mr. Clark, included inspecting and maintaining equipment, driving ahead of his crew to place signs along the highway, supervising the work of his subordinates, and
weedeating. The claimant admitted that weedeating was secondary to his other activities. Moreover, the claimant testified that much of his time was spent getting in and out of his truck and driving as his crew moved forward.
Notwithstanding that Mr. English testified on the claimant's behalf that the claimant got in and out of his truck and weedeated approximately one hundred times per shift, English further testified that his primary duty was to operate a *517 blade tractor. Based on English's description of his own work activities, he could not have constantly observed the claimant's work-related activities. Therefore, English's testimony concerning the number of times the claimant got in and out of his truck and weedeated per day is, at best, a guess, unverifiable by the factual evidence of record. Moreover, English admitted that he sometimes weedeated for as much as a week at a time during the time in question.
While arguably an integral part of the claimant's work-related activities at certain time of the year, the record demonstrates that weedeating was neither the claimant's sole or primary responsibility, nor was the claimant required to perform this activity on a constant basis. Therefore, the claimant has failed to prove that the claimant's own act of weedeating was repetitive for purposes of this claim.
This court views the evidence and all reasonable inferences deducible from it in the light most favorable to the Commission's findings and will affirm if those findings are supported by substantial evidence. Jeter v. B.R. McGinty Mech. , 62 Ark. App. 53, 55, 968 S.W.2d 645, 647 (1998). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The issue on appeal is not whether the court might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, the court must affirm its decision. Id. When a claim is denied, the substantial-evidence standard of review requires the court to affirm the Commission if its opinion displays a substantial basis for the denial of the relief sought. Id.
For an injury to be compensable under the gradual-onset, rapid-repetitive-motion law, a claimant must prove by a preponderance of the evidence that (1) the injury arose out of and in the course of his or her employment; (2) the injury caused internal or external physical harm to the body that required medical services or resulted in disability or death; (3) the injury was caused by rapid-repetitive motion; and (4) the injury was a major cause of the disability or need for treatment. Lay v. United Parcel Serv. , 58 Ark. App. 35, 40, 944 S.W.2d 867, 870 (1997) ; Ark. Code Ann. § 11-9-102(4)(A)(ii)(a) (Repl. 2012). An injury must be established by medical evidence supported by objective findings. Galloway , 2010 Ark. App. 610, at 6, 378 S.W.3d at 214.
An injury is caused by a rapid-repetitive motion when, as the term naturally suggests, the task or tasks performed are repetitive, and the repetitive motion is done rapidly. Id. The Arkansas Supreme Court has held that multiple tasks involving different movements can be considered together to satisfy the repetitive element of "rapid repetitive motion." See Hapney v. Rheem Mfg. Co. , 342 Ark. 11, 26 S.W.3d 777 (2000). As a threshold issue, the tasks must be repetitive, or the rapidity element is not reached. Galloway v. Tyson Foods, Inc. , 2010 Ark. App. 610, at 6, 378 S.W.3d 210, 214. This court has previously required some showing of how rapidly the repetitive actions were performed and observed that "in its ordinary usage, rapid means swift or quick." Rudick v. Unifirst Corp. , 60 Ark. App. 173, 962 S.W.2d 819 (1998) (internal citations omitted).
No case in Arkansas has yet decided whether weed eating is a repetitive movement. Most of the "repetitive" movement cases involved factory or assembly-line jobs. See, e.g. , Boyd v. Dana Corp. , 62 Ark. App. 78, 966 S.W.2d 946 (1998) (employee's job involved rapid-repetitive motion when the job involved motions that were repeated 115 to 120 times a day, separated *518 by periods of only one and a half minutes). See also Moody v. Addison Shoe Co. , 104 Ark. App. 27, 29, 289 S.W.3d 115, 116 (2008) (factory worker making 1920 and 2160 individual shoes with gradual-onset shoulder injury was rapid-repetitive movement). Apart from factory workers, there are a few typical cases. Some involve walking. For example, there is Pearson v. Worksource , 2012 Ark. 406, 424 S.W.3d 311, in which our supreme court held that the Commission erred in concluding that an employee's blister injury to his big toe was non-compensable because his walking duties at work were not rapid-repetitive movements. In Pearson , the claimant was required to cover bundles of steel as quickly as possible, had to walk fast from one end of a field to the other, and the "only reasonable conclusion" was that the fast-paced repetitive walking caused a blister given the rapid motion of the claimant's ill-fitting boots rubbing against his toe. But see Jenkins v. It's Fashion , 2010 Ark. App. 746, 379 S.W.3d 630 (substantial evidence that employee's gradual-onset bilateral Achilles tendonitis had not been caused by rapid-repetitive motion as a manager of a retail clothing store, even though her physician testified that the employment was the major cause of claimant's condition and that the condition was the result of rapid-repetitive motion at work; testimony of another manager supported finding that claimant's use of ladder was infrequent and that use of ladder did not constitute rapid-repetitive motion).
This case is more like Lay v. UPS , in which we affirmed the Commission's denial of benefits because a delivery-truck driver, who briefly performed several different rapid motions, repeated at differing intervals and separated by periods of several minutes, did not engage in a rapid-repetitive motion. 58 Ark. App. 35, 944 S.W.2d 867 (1997). And consider Pulaski County Special School District v. Stewart , in which the activity of a school-bus driver opening and closing a difficult-to-operate door ten times in two hours was not a rapid-repetitive task. 2010 Ark. App. 487, at 2, 375 S.W.3d 758, 759. Finally, the supreme court has held that a custodian in a public school failed to establish a rapid-repetitive injury when she performed several different tasks each day. Malone v. Texarkana Pub. Sch. , 333 Ark. 343, 969 S.W.2d 644 (1998).
There is no doubt that Carlat had a physical job and that he worked hard at it. On the whole, however, given this record, we cannot say that the Commission's decision was insufficiently supported. We therefore affirm its decision.
Affirmed.
Klappenbach and Brown, JJ., agree.