BART F. VIRDEN, Judge
Jeff Clark appeals the Workers' Compensation Commission's ("the Commission") decision finding that he failed to prove that he sustained a specific-incident compensable injury while working for Williamson G.C., Inc. ("Williamson"). On appeal, Clark argues that the Commission's finding is not supported by substantial evidence. We affirm.
On March 8, 2016, Clark was working as a welder for Williamson when he claimed he injured his right elbow while on the job. Clark filed a compensation claim. After initially accepting liability, Williamson controverted the claim in its entirety and denied that Clark was entitled to further medical benefits and temporary total-disability benefits. The case proceeded to a hearing before an administrative law judge ("ALJ").
At the hearing, Clark testified that he was working at Williamson the morning of *460 March 8, 2016, when he was injured. Clark explained that he reached for his "heli-arc rig" after he had finished welding, and when he pulled it toward him, he felt a "pop" at the top of his right elbow. Clark testified that after lunch he reported the incident to the safety manager who told him to "wait a couple of days and see how it was and let him know." Clark testified that later that day he told the safety manager that his elbow still hurt, but his employer refused to send him to a doctor. The next day, Clark went to see his primary-care physician, Dr. Robert Woodrome. Clark testified that he told Dr. Woodrome about the injury and that he also told the doctor about his arthritis and the chronic pain in his lower back and ankle. Dr. Woodrome did not prescribe any treatment for Clark's elbow, but Clark testified that Dr. Woodrome told him he needed to apply for workers' compensation. Clark testified that he continued to work despite the pain, which was bad enough that it kept him from sleeping. Dr. Woodrome's progress notes showed that Clark's chief complaints were hypertension, chronic pain, enlarged prostate, and arthritis. There was no notation in Dr. Woodrome's notes that Clark was there to discuss or receive treatment related to an injury to his elbow, and under the "musculoskeletal" heading, Dr. Woodrome noted Clark's back pain and arthritis-related pain and that Clark denied carpal tunnel syndrome, joint stiffness, leg cramps, and muscle aches and spasms. Dr. Woodrome assessed that Clark suffered from hypertension, chronic fatigue, osteoarthritis, and an enlarged prostate.
Clark recounted that on April 11, 2016, he was examined by orthopedic physician Dr. Daniel Fuentes and that he told Dr. Fuentes about the injury to his elbow. Clark stated that Dr. Fuentes did not prescribe any treatment or perform any treatment in the office. The physician's notes show that Clark was there for a follow-up visit regarding right-arm pain that he claimed resulted from a work-related injury. The notes show that Clark had pain and "fullness" near the lateral epicondyle, and Dr. Fuentes recorded that his impression of the complaint was "acute on chronic right elbow pain with history of lateral epicondylitis."[1]
Clark testified that in May he was examined by Dr. Pavan Pinnamaneni, a family doctor he had seen before, who gave him medication for the pain in his arm. Dr. Pinnamaneni's notes and the medical records show that Clark's arm pain had begun five years earlier, that he had been diagnosed with lateral epicondylitis, and that treatment for his condition had begun in 2014. Dr. Pinnamaneni observed that Clark's right lateral epicondyle was tender. Clark saw Dr. Pinnamaneni again two weeks later, and the physician's notes showed that the onset of Clark's right-elbow pain had been five years earlier and that Clark had been treated with heat therapy and pain medication.
On June 9, 2016, Clark was examined by Dr. Bill Mathias, who noted that Clark reported he suffered an injury to his right elbow on March 8, 2016, and that though there was no swelling, erythema, or warmth in the area, Clark claimed to have increased pain. Dr. Mathias ordered an MRI and assessed the results as follows:
Slightly increased signal intensity is present within the common extensor tendon adjacent to its lateral humeral *461 epicondyle insertion. No tendon retraction is evident. Increased signal intensity is present within the common flexor tendon adjacent to its medial humeral epicondyle insertion. No tendon retraction is evident.
1. Work-related injury 3-8-16.
2. Right distal bicep tendon strain.
3. Probable non-displaced avulsion injury of the right distal biceps tendon insertion in to the radial tuberosity.
Clark testified that Dr. Mathias set certain physical limitations: he was not allowed to use his right arm, pick up more than twenty pounds, climb, or use his "upper extremities." Clark testified that he had not worked since July when Dr. Mathias set the limitations listed above. Clark stated that he had received some temporary disability benefits until May 8, 2016.
Following the hearing, the ALJ entered an order finding that though there were objective medical findings to support Clark's right-arm condition, he failed to prove a causal connection between any incident on March 8, 2016, and a compensable injury. The ALJ cited Clark's testimony that he had a history of elbow pain going back to 2009, and he experienced a pattern of elbow issues that would "flare up, get better, and then flare up again." The ALJ noted that Clark's medical records showed that in 2014, Dr. Pinnamaneni diagnosed Clark with lateral epicondylitis in his right arm and began treatment. Dr. Pinnamaneni's notes from May 2016 show that Clark was again being treated for elbow pain and that he suffered tenderness in his right lateral epicondyle. The ALJ found that in July 2016 Clark saw Dr. Mathias who recommended x-rays and an MRI and placed work restrictions on Clark. The ALJ acknowledged Dr. Mathias's statement that, after reviewing the MRI, it was his opinion that Clark suffered "right tendon strain and an avulsion injury" and that he attributed this to a work-related injury on March 8, 2016; however, the ALJ also noted that Clark had suffered right-forearm and elbow pain since 2014. The ALJ found that
[t]here are objective medical findings to support the claimant's right arm condition. However, those medical findings have no causal connection to the incident the claimant testified to as having occurred on March 8, 2016.... [T]he claimant stated that he had pain and swelling issues related to his right elbow/forearm prior to March 8, 2016. Additionally, the medical records reflect that the claimant was being treated for elbow issues almost two years prior to March 8, 2016.
Clark appealed the ALJ's decision to the Commission. The Commission affirmed and adopted the ALJ's opinion. Clark then appealed the Commission's decision to this court. On appeal, Clark argues that the Commission's finding that he failed to establish that he had sustained a compensable injury as a result of a specific incident is not supported by substantial evidence.
When an appeal is taken from the denial by the Commission of a claim for benefits, the substantial-evidence standard of review requires that we affirm if the Commission's opinion contains a substantial basis for the denial of relief. Halliday v. N. Ark. Reg'l Med. Ctr. , 2016 Ark. App. 392, at 5, 500 S.W.3d 198, 201. We view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings. Id. Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Id. The question is not whether the evidence would have supported findings contrary to the ones made by the Commission; there may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we had been sitting as the trier of fact or hearing the case de *462 novo. Id. The determination of the credibility of witnesses and the weight of evidence is within the sole province of the Commission. Id. The Commission is not required to believe self-serving testimony that a claimant sustained an injury. Bittle v. Wal-Mart Assocs., Inc. , 2017 Ark. App. 639, at 9, 537 S.W.3d 753, 759.
To prove the occurrence of a specific-incident compensable injury, the claimant must establish that (1) an injury occurred arising out of and in the scope of employment; (2) the injury caused internal or external harm to the body that required medical services or resulted in disability or death; (3) the injury is established by medical evidence supported by objective findings as defined in Ark. Code Ann. § 11-9-102(16) (Repl. 2012), which are findings that cannot come under the voluntary control of the patient; and (4) the injury was caused by a specific incident and is identifiable by time and place of occurrence. Ark. Code Ann. § 11-9-102(4)(A)(i). The claimant has the burden of proving these elements by a preponderance of the evidence. Ark. Code Ann. § 11-9-102(4). The requirement that a compensable injury be established by medical evidence supported by objective medical findings applies only to the existence and extent of the injury. Cross v. Magnolia Hosp. Reciprocal Grp. of Am. , 82 Ark. App. 406, 109 S.W.3d 145 (2003).
We hold that the Commission's finding that Clark failed to establish a specific-incident compensable injury is supported by substantial evidence. Dr. Woodrome's March 9, 2016 notes do not show that Clark mentioned pain in his arm or an injury at work, nor did Dr. Woodrome perform or prescribe any treatment for an injury to Clark's right arm. Dr. Fuentes and Dr. Pinnamaneni both noted that Clark had suffered from right-arm pain and lateral epicondylitis before March 8, 2016. Dr. Fuentes did not perform or prescribe any treatment when Clark saw him in April, and Dr. Pinnamaneni prescribed pain medication, which was the same treatment for Clark's lateral epicondylitis he had been prescribing since 2014. The only new diagnosis regarding Clark's right arm stemmed from an MRI conducted four months after the incident. Dr. Mathias's diagnosis of distal bicep tendon strain and an avulsion injury due to a work-related injury on March 8, 2016, is based on Clark's self-reported history, and the Commission noted that though it was Dr. Mathias's opinion that Clark's elbow condition resulted from an injury sustained at work, objective medical evidence showed that Clark had a history of elbow pain since at least 2014.
The Commission did not err by finding that Clark failed to establish a causal connection between any event on March 8, 2016, and the elbow condition established by the medical evidence. Given the evidence, our standard of review, and our deference to the Commission's credibility findings, we hold that there was a substantial basis for the Commission's decision.
Affirmed.
Abramson and Hixson, JJ., agree.

Dr. Fuentes began treating Clark in February 2015 for right-elbow pain.