PHILLIP T. WHITEAKER, Judge
Appellant, the Arkansas State Military Department, Public Employee Claims Division (ASMD), appeals an order of the Arkansas Workers' Compensation Commission (Commission) finding that appellee, Allen Jackson, was entitled to a 37 percent anatomical-impairment rating to the left lower extremity as well as a 40 percent wage-loss award. ASMD contends that the evidence submitted was insufficient to support the Commission's award. We find no error and affirm.
I. Injury and Medical History
Jackson, age 67, was employed as a history teacher by ASMD. He suffered admittedly compensable lower back and left leg injuries after a fall at work. At the time of his accident, Jackson was suffering from post-polio syndrome which resulted in paralysis *814 of his right leg and partial paralysis of his left leg.[1] However, he had been ambulatory with the use of a crutch and a leg brace and had been quite active prior to the fall.
Jackson received medical care for his work-related injuries. Dr. John Adametz treated Jackson initially and diagnosed him with hip pain, a lumbar strain, and a strain of the left knee. When an MRI revealed an acute compression fracture at L1 and a large disc herniation at L4-5,[2] Dr. Adametz recommended surgery on Jackson's back, but Jackson declined. Dr. Adametz released Jackson to maximum medical improvement (MMI) on July 12, 2016.
Jackson was treated by Dr. Eric Gordon for his knee injury. Dr. Gordon noted left knee pain with effusion secondary to injury and osteoarthritis ; tibial plateau fracture lateral plateau, nondisplaced and closed; patella baja; and a sprain. He also noted a faulty general knee ligament, likely due to Jackson's history of polio, and resulting muscular weakness. Dr. Gordon aspirated the knee, but Jackson's symptoms returned. Dr. Gordon recommended a total knee arthroplasty, but Jackson declined this surgery as well.
Dr. Gordon released Jackson to MMI on August 16, 2016, with a desk-work restriction. Based on objective measures and the AMA Guides to the Evaluation of Permanent Impairment , Fourth Edition, Dr. Gordon opined that Jackson had sustained a 37 percent impairment to the left lower extremity which translates to a 15 percent impairment to the whole person. Dr. Gordon ultimately concluded that 50 percent of Jackson's impairment rating was attributable to his preexisting condition and 50 percent to his compensable injury.
Jackson was treated by Dr. Carlos Roman for pain management. As to Jackson's knee, Dr. Roman noted that Jackson had cruciate and collateral ligament laxity of a severe nature and that any knee replacement surgery would be related to his underlying arthritis. He deferred to Dr. Gordon's assessment of impairment as it related to Jackson's knee injury. As for his lumbar spine, Dr. Roman indicated that Jackson had a compression fracture at L1 and a large disc herniation laterally at L4-L5 superiorly with significant rotation of the spine with possible foraminal narrowing at that point. He observed a significant rotary scoliosis that was degenerative in nature and not the result of the injury. He also noted degenerative-disc disease associated with his weak musculature. He opined that it was difficult to differentiate the nerve pain and weakness associated with Jackson's injury from that associated with his polio. Additionally, he noted that degenerative-disc disease in scoliosis, including disc bulges, was very common. Dr. Roman stated that he did not think any further interventions or procedures were indicated for Jackson's work-related injury to his back. However, he then opined, to a reasonable degree of medical certainty, that the L1 compression fracture could be attributed to Jackson's workplace injury, that Jackson suffered back pain from that, and that he had reached MMI. He subsequently opined that Jackson had sustained a 5 percent impairment to the body as a whole as a result of his back injury.
After a request for a change of physician, Jackson was treated by Dr. Vestal Smith. Dr. Smith opined that Jackson had sustained a 5 percent impairment rating for the lumbar compression fracture ; a 5 *815 percent impairment rating for the degenerative changes at L4-L5; and, when combined with Dr. Gordon's assessment of 15 percent impairment of the whole person for the lower extremity, that he had sustained a 23 percent impairment of the whole person.
II. Claims Before the Commission
Jackson filed a claim with the Commission and proceeded to a hearing before an administrative law judge (ALJ) on the issues of a 37 percent permanent physical impairment rating to the left lower extremity, as well as permanent- and total-disability benefits or alternatively wage-loss disability and controverted attorneys' fees.[3]
The ALJ found that Jackson sustained a permanent physical impairment rating in the amount of 10 percent to the body as a whole as the result of the lumbar injury and 37 percent to the left lower extremity as a result of the left knee injury ; that he suffered a loss of earning capacity/wage-loss disability in the amount of 40 percent over and above his anatomical impairment; and that he was entitled to the maximum attorney-fee award on the controverted indemnity benefits awarded. ASMD timely appealed the ALJ's opinion to the Commission as it related to his impairment rating and wage-loss award. The Commission affirmed and adopted the ALJ's decision. Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion. SSI, Inc. v. Cates , 2009 Ark. App. 763, 350 S.W.3d 421. In so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. Id. Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's majority opinion. Id.
III. Analysis
On appeal from the Commission's ruling, ASMD challenges the sufficiency of the evidence to support its determination of a 37 percent impairment rating and the 40 percent wage-loss award. We review the Commission's decision in the light most favorable to its findings and affirm when the decision is supported by substantial evidence. Parker v. Atl. Research Corp. , 87 Ark. App. 145, 189 S.W.3d 449 (2004). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. Id. The Commission has the duty to make determinations of credibility, to weigh the evidence, and to resolve conflicts in medical testimony and evidence. Martin Charcoal, Inc. v. Britt , 102 Ark. App. 252, 284 S.W.3d 91 (2008). If reasonable minds could reach the result found by the Commission, the appellate court must affirm. Prock v. Bull Shoals Boat Landing , 2014 Ark. 93, 431 S.W.3d 858.
ASMD first contends that the Commission's finding of 40 percent wage-loss disability is not supported by substantial evidence. In support of its claim, ASMD notes that Jackson injured his back and his left leg when he fell while walking through a classroom. ASMD acknowledges Jackson's claims that the fall was "violent" and his injuries "excruciating." ASMD contends, however, that Jackson's claims are not supported by the evidence, because *816 Jackson was diagnosed only with a mild compression fracture of his back and a knee strain, for which no surgeries were performed or planned. Additionally, ASMD emphasizes Jackson's educational and employment history. Academically, Jackson has a bachelor's degree and master's degree in education from UALR and has received exceptional academic recognition. Professionally, in addition to his teaching tenure, Jackson has previous work experience as a top producing professional radio broadcaster/announcer/news director in the Dallas area and as an operator of a successful satellite television business. ASMD further notes that Jackson had been successful in patenting four different items that he was currently trying to market and "monetize" and that he was currently working on a book about the Declaration of Independence and the Constitution. ASMD asserts that Jackson is able to manage a business and supervise employees; he reads well, types, and can operate a computer; he can also balance a checkbook, operate a smartphone, and drive a vehicle. Thus, ASMD contends that Jackson possesses numerous skills that would allow him to find a job if he were motivated to do so. Most importantly, ASMD notes that Jackson elected retirement for financial reasons instead of looking for other employment within his skill set. Based on the foregoing, ASMD contends that substantial evidence militates against a wage-loss determination. We now consider ASMD's arguments in connection with the law of workers' compensation benefits.
Pursuant to Arkansas Code Annotated section 11-9-522(b)(1) (Repl. 2012), when a claimant has an impairment rating to the body as a whole, the Commission has the authority to increase the disability rating based on wage-loss factors. Redd v. Blytheville Sch. Dist. No. 5 , 2014 Ark. App. 575, 446 S.W.3d 643. Here, Jackson has an impairment rating to the body as a whole, and the Commission was within its authority to consider wage-loss factors. In doing so, the Commission is charged with the duty of determining disability based upon a consideration of medical evidence and other matters affecting wage loss, such as the claimant's age, education, and work experience. Emerson Elec. v. Gaston , 75 Ark. App. 232, 58 S.W.3d 848 (2001).
The ALJ and the Commission went into great detail recounting the facts related to the wage-loss factors. It is clear that the Commission considered Jackson's education and work-related experiences. Likewise, the Commission considered the medical evidence and Jackson's physical limitations, both before and after the work-related accident. The Commission even considered Jackson's motivation to return to work, because a lack of interest or a negative attitude and an injured employee's motivation to return to work can be considered by the Commission in assessing the employee's functional disability. Weyerhaeuser Co. v. McGinnis , 37 Ark. App. 91, 824 S.W.2d 406 (1992). It acknowledged that Jackson had elected retirement, not only because of his physical limitations, but also for financial reasons. After recounting all these facts, the ALJ and the Commission denied Jackson's claim for permanent and total disability; but it found he had sustained a loss of earning capacity in the amount of 40 percent over and above his anatomical-impairment rating considering appropriate wage-loss factors.
In asking us to overturn the Commission's decision, ASMD is requesting us, in essence, to reweigh the evidence and credibility findings made by the Commission. That is not our role. It is the Commission's duty to weigh the evidence, and it found that Jackson was entitled to a wage-loss *817 disability of 40 percent. On this record, we cannot say that the Commission failed to consider the appropriate evidence or that reasonable minds could not reach the result found by the Commission. Accordingly, we affirm on this point.
ASMD next argues that there was insufficient evidence to support the Commission's finding of a 37 percent impairment rating, because the workplace injury was not the major cause of his impairment. To support its contention, ASMD notes that Jackson had contracted polio as a child, which resulted in paralysis of his right leg and partial paralysis of his left leg. Although Dr. Gordon suggested that knee replacement surgery might be beneficial, Jackson declined all surgical options. After finding that Jackson had sustained a 37 percent impairment rating, Dr. Gordon opined that his workplace injury was only 50 percent caused by his compensable injury with the other 50 percent being associated with his preexisting condition. ASMD contends that for permanent disability benefits to be payable, the compensable injury must be the major cause of the permanent disability; that is, it must be more than 50 percent of the cause of the impairment. Because Dr. Gordon did not find his impairment to be more than 50 percent caused by his compensable injury, ASMD argues the award of benefits was not appropriate. Again, we will now consider ASMD's arguments in connection with the law of workers'-compensation benefits.
We have previously held and defined "permanent impairment" as "any permanent functional or anatomical loss remaining after the healing period has ended." Main v. Metals , 2010 Ark. App. 585, at 9, 377 S.W.3d 506, 511. Under the statute, any determination of the existence or extent of physical impairment must be supported by objective and measurable findings. Ark. Code Ann. § 11-9-704(c)(1)(B) (Repl. 2012). A claimant will not receive an award for permanent benefits unless the injury was the major cause of the disability or impairment. Ark. Code Ann. § 11-9-102(4)(F)(ii)(a) . "Major cause" means more than 50 percent of the cause, which the claimant must establish by a preponderance of the evidence. Ark. Code Ann. § 11-9-102(14)(A) ; see also Walgreen Co. v. Goode , 2012 Ark. App. 196, 395 S.W.3d 398. If a compensable injury combines with a preexisting disease or condition to cause or prolong disability or a need for treatment, a claimant will not receive an award for permanent benefits unless the injury was the major cause of the permanent disability or need for treatment. Ark. Code Ann. § 11-9-102(4)(F)(ii)(b) . However, an employer takes the employee as he finds him, and employment circumstances that aggravate preexisting conditions are compensable. Leach v. Cooper Tire & Rubber Co. , 2011 Ark. App. 571, 2011 WL 4477865. The major-cause requirement is satisfied when a compensable injury aggravates an asymptomatic preexisting condition such that the condition becomes symptomatic and requires treatment. Firestone Bldg. Prods. v. Hopson , 2013 Ark. App. 618, at 8, 430 S.W.3d 162, 167 ; Wright v. St. Vincent Doctors Hosp. Indem. Ins. Co. of N. Am. , 2012 Ark. App. 153, 390 S.W.3d 779.
In essence, ASMD argues that the only evidence the Commission should have considered in determining the impairment rating was Dr. Gordon's testimony. This is incorrect. The Commission is "not limited, and never has been limited, to medical evidence only in arriving at its decision as to the amount or extent of permanent partial disability suffered by an injured employee as a result of injury." Hickman v. Kellogg, Brown & Root , 372 Ark. 501, 511, 277 S.W.3d 591, 599 (2008) (quoting *818 Wilson & Co. v. Christman , 244 Ark. 132, 424 S.W.2d 863 (1968) ). It is the duty of the Commission to translate the evidence on all issues before it into findings of fact. Id. ; Gencorp Polymer Prods. v. Landers , 36 Ark. App. 190, 820 S.W.2d 475 (1991). Here, the Commission not only had Dr. Gordon's opinion with regard to apportionment, it also had Jackson's testimony that he had remained quite physically active prior to the accident, including skiing and playing sports. Jackson also testified that, prior to his accident, he was able to move around with only the aid of a right-leg brace and a crutch, but after the accident he was practically confined to a wheelchair or scooter and had significant difficulties moving around his house and to and from his car. Additionally, there was no evidence that Jackson had complained of any knee problems at or near the time of the accident. Given these facts, we cannot say that the Commission's decision with regard to the disability rating was without substantial evidence.
Affirmed.
Virden and Klappenbach, JJ., agree.

This condition had been present since Jackson was approximately two years old.

The MRI also revealed significant rotary scoliosis.

Other issues presented to the ALJ included additional temporary total-disability benefits; an impairment rating for a sleep disorder; a greater impairment rating than the doctors opined; additional medical benefits-including a motorized wheelchair, wheelchair accessible van, and portable wheelchair lift; appropriate weekly compensation benefits; and underpayment of indemnity benefits. These issues are not relevant for purposes of this appeal.