Cite as 2021 Ark. App. 157

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-20-214

| | |
|---|---|
| CECIL A. OSBURN<br>APPELLANT<br><br>V.<br><br><br>PEPSI COLA METRO BOTTLING<br>CO.; INDEMNITY INS. CO. OF<br>NORTH AMERICA INSURANCE;<br>AND DEATH AND PERMANENT<br>TOTAL DISABILITY TRUST FUND<br>APPELLEES | **Opinion Delivered:** April 7, 2021<br><br>APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION<br>[NOS. G502244 & G603663]<br><br><br><br><br><br>AFFIRMED |

## KENNETH S. HIXSON, Judge

This is a workers'-compensation case. Appellant Cecil Osburn drove a truck and made deliveries for appellee Pepsi Cola Metro Bottling Company (Pepsi). During his employment, Osburn sustained an admittedly compensable injury to his right shoulder on January 2, 2015. Pepsi accepted this injury as compensable and paid all related benefits. Osburn later claimed that he sustained a work-related injury to his left shoulder and neck on May 16, 2016, and Pepsi controverted compensability of that claim. After a hearing, the administrative law judge (ALJ) denied compensability of the left-shoulder and neck claim finding that Osburn failed to prove that these issues were related to his work activities on May 16, 2016. The ALJ instead found that the medical findings related to this claim were caused by degenerative and arthritic conditions. The Workers' Compensation Commission

(Commission) affirmed and adopted the ALJ's opinion,[1] and Osburn now appeals. On appeal, Osburn argues that the Commission erred in denying compensability of his claim. We affirm.

"Compensable injury" means "an accidental injury causing internal or external physical harm to the body . . . arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is 'accidental' only if it is caused by a specific incident and is identifiable by time and place of occurrence." Ark. Code Ann. § 11-9-102(4)(A)(i) (Supp. 2019). A compensable injury must be established by medical evidence supported by objective findings. Ark. Code Ann. § 11-9-102(4)(D). "Objective findings" are those findings that cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16)(A)(i). Section 11-9-102(4)(E)(i) provides that the employee has the burden of proving a compensable injury by a preponderance of the evidence.

Osburn testified that he was employed with Pepsi as a bay driver—driving a truck with a sliding side door—in January 2015. Osburn described the admittedly compensable right-shoulder injury that occurred on January 2, 2015. On that day Osburn was making a delivery, and after he reached into the truck to grab a case of Pepsi, he stepped back and slipped while holding the case. Osburn reported the right-shoulder injury to his supervisor, Travis Gerred. Osburn came under the care of Dr. Jeffrey Evans, who diagnosed Osburn

---

[1]The Commission is permitted to affirm and adopt the ALJ's opinion as its own, and in so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *Grothaus v. Vista Health, LLC*, 2011 Ark. App. 130, 382 S.W.3d 1.

with a right-shoulder rotator-cuff tear as well as right-shoulder arthritis. In March 2015, Dr. Evans performed a right-shoulder arthroscopic surgery, and he performed an additional right-shoulder surgery in April 2016. Osburn acknowledged that Dr. Evans provided no treatment for his neck. During this time frame, Osburn was doing transitional duty at Pepsi performing light office work. As stated previously, Pepsi accepted compensability for the right-shoulder injury and covered the surgeries and other related benefits.

Osburn returned to work driving a truck for Pepsi on May 16, 2016. It was on this day that Osburn claims he sustained a work-related left-shoulder and back injury, which is the subject of this appeal. Osburn stated that he was returned to work on that day as a bulk driver, driving an eighteen-wheeler that loaded from the back. Osburn stated that on one of his delivery stops he unlatched the cargo door, and when he pulled on the latch to open the door, he felt a burning pain in his neck. Osburn stated that he had some neck pain prior to this incident but that this made it worse. Osburn also claimed that he felt left-shoulder pain as a result of this incident, and he stated that he reported this incident to his supervisor stating that he thought he had pulled a muscle in his left shoulder.[2]

Osburn testified that he initially came under the care of Dr. Lukasek for his left-shoulder and neck complaints. Dr. Lukasek performed an x-ray but advised Osburn that he needed an MRI.

Osburn ultimately came under the care of a neurosurgeon, Dr. Clinton Baird. After performing an MRI, Dr. Baird detected abnormalities in Osburn's cervical spine. On

---

[2]Osburn's supervisor, Travis Gerred, controverted this account. According to Gerred, Osburn told him that "he lifted the door and reinjured his [right] shoulder." Gerred did not recall Osburn mentioning a left-shoulder or neck injury that day.

December 21, 2016, Dr. Baird performed an anterior cervical discectomy and fusion at the C5 through C7 levels. According to Osburn, after he underwent this surgery, the pain in his neck and left shoulder was gone.

There are medical documents in the record indicating that Osburn's neck pain did not arise from a specific incident occurring on May 16, 2016. A July 3, 2016, emergency-room report from Mercy Hospital Fort Smith states that Osburn had "surgery to right shoulder in April 2016 and has had neck pain and muscle spasms since. He says Dr. Evans does not believe his neck pain is from the right shoulder surgery." In a Washington Regional Medical Center neurosurgery questionnaire dated July 27, 2016, Osburn represented that he had neck and shoulder pain since the end of April 2016 and that this was not a workers'-compensation injury. An August 22, 2016, office note from Washington Regional Medical Center indicated neck pain but stated, "This is not related to a specific injury, but he reports sudden onset of neck pain and muscle spasm while recovering from a right biceps tenotomy in April 2016."

The December 21, 2016, preoperative report of Osburn's surgeon, Dr. Baird, did not relate a history of any specific incident but stated, "The patient . . . had surgery for his shoulder in April and woke up with neck pain." Dr. Baird noted that the MRI revealed a disk osteophyte complex at C5–C6, a flattening of the spinal cord at C5–C6, and a broad-based disk bulge at C6–C7. Dr. Baird gave the impressions "cervical spinal stenosis" and "severe C5–C6 and C6–C7 degenerative cervical disk disease."

In the ALJ's opinion, which was affirmed and adopted by the Commission, the ALJ made these findings:

4

Here, the claimant certainly suffers from some left shoulder and neck pain. He has been treated with surgery to relieve this pain. The surgery performed by Dr. Baird did relieve his issues, both in the neck and left shoulder. The claimant's medical records in evidence reflect that the claimant suffered from arthritic and degenerative issues in the left shoulder and neck. The claimant has presented medical evidence. He has presented objective medical findings; however, those findings are related to degenerative and arthritic conditions in his left shoulder and neck. The claimant's neck and left shoulder issues are not related to his work activities based on the information presented. There is no causal connection between the claimant's neck and left shoulder issues and his work activities on May 16, 2016. Additionally, there is nothing in the record to support a finding that the claimant's work activities on May 16, 2016 aggravated pre-existing neck and left shoulder issues. The claimant stated that he simply lifted a latch and felt burning in the area of his neck and left shoulder. The claimant has failed to prove by a preponderance of the evidence that he suffered a compensable injury to his neck and left shoulder on May 16, 2016. Furthermore, the record contains credible testimony that he did not report left shoulder or neck injuries to his supervisor. He has failed to prove that there is a causal connection between any medical evidence in the form of objective medical findings presented and any work related activity on May 16, 2016. The claimant's neck and shoulder issues are degenerative and arthritic in nature. The claimant is not entitled to medical benefits or temporary total disability based on the finding that the claimant did not suffer a compensable injury to his left shoulder and neck May 16, 2016.

In this appeal, Osburn argues that the Commission erred in finding that he failed to prove compensable left-shoulder and neck injuries as a result of a work-related incident that occurred on May 16, 2016. Osburn correctly asserts that a preexisting disease or infirmity does not disqualify a claim if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the disability for which workers' compensation is sought. *See Bittle v. Wal-Mart Assocs., Inc.*, 2017 Ark. App. 639, 537 S.W.3d 753. Osburn relies on his testimony that, on that day, he immediately felt a burning pain in his neck and also experienced left-shoulder pain while lifting the rear cargo door of his Pepsi delivery truck. Osburn asserts that, prior to the May 16, 2016, incident, his neck condition did not warrant surgical intervention. However, approximately seven months later, Dr. Baird performed a

5

cervical fusion surgery at C5 through C7, which resolved all pain in Osburn's left shoulder and neck. Under such circumstances, Osburn contends he established compensability and should have been awarded the associated benefits.

In reviewing decisions from the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings. *Yates v. Boar's Head Provisions Co., Inc.*, 2017 Ark. App. 133, 514 S.W.3d 514. When the Commission denies benefits because the claimant has failed to meet his or her burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission; if so, the appellate court must affirm. *Id.* Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Id.*

Based on our review of the record, we hold that the Commission's decision denying compensability for Osburn's alleged left-shoulder and neck injuries displays a substantial basis for the denial of relief. Although Osburn claimed that he sustained these injuries—or aggravated them—during a specific incident on May 16, 2016, there was evidence to the contrary. Notably, there are several references in the medical records showing that Osburn's complaints of left-shoulder and neck pain began in April 2016, which was before the alleged May 16, 2016, incident occurred. And in a neurosurgery questionnaire dated July 27, 2016, Osburn himself represented that this was not a workers'-compensation injury. Moreover,

6

while Dr. Baird did note objective findings at the C5 through C7 levels of Osburn's cervical spine, he also gave the impression of "severe C5–C6 and C6–C7 degenerative cervical disk disease." Therefore, these objective findings did not support a compensable condition related to any work-related incident. From this evidence, reasonable minds could conclude that Osburn failed to meet his burden of proving a causal connection between his left-shoulder and neck issues and a specific incident occurring at work. Therefore, we affirm the Commission's finding denying compensability for Osburn's claim.

Affirmed.

HARRISON, C.J., and BROWN, J., agree.

*Caddell Reynolds*, by: *Matthew J. Ketcham*, for appellant.

*Worley, Wood & Parrish, P.A.*, by: *Melissa Wood*, for appellees.