Cite as 2026 Ark. App. 60

# ARKANSAS COURT OF APPEALS
## DIVISION I
No. CV-25-212

| | |
|---|---|
| DIANA COLEMAN <br><br> APPELLANT <br><br> V. <br><br> YOUTH HOME, INC. <br><br> APPELLEE | Opinion Delivered February 4, 2026 <br><br> APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION <br><br> [NO. H304343] <br><br><br> AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Diana Coleman appeals the Arkansas Workers' Compensation Commission's (the Commission's) decision finding that she failed to establish that she sustained a compensable injury to her right knee, hip, and thigh while working for Youth Home, Inc. On appeal, Coleman argues that the Commission's decision is not supported by substantial evidence. We affirm.

In 1988, Coleman began working for Youth Home, a facility for youth who have experienced abuse, neglect, abandonment, or other similar issues. Coleman worked as a residential-treatment counselor. On Monday, June 19, 2023, Coleman fell while restraining a fourteen- or fifteen-year-old patient. She did not immediately report the injury to Youth Home, and she returned to work the next day and the following Friday and Sunday evenings.

On Monday, June 26, Coleman reported her injuries to Youth Home, and Coleman saw Dr. Ellen Culpit on that day. The status report from her visit states her diagnosis as "fall initial encounter," right knee pain, and bursitis in the right hip. The report stated further that Coleman could return to work that day with restrictions of "[s]edentary [j]ob [c]lass" with no squatting or kneeling, and it recommended a follow-up in two days.

Coleman also had x-rays of her right knee and right hip on June 26. The radiology reports provide in part as follows:

X-Ray, Right knee, 3 views

Findings: There is no evidence of acute fracture, dislocation or osseous lesion. The femorotibial joint space is narrowed, medially. The adjacent soft tissues appear unremarkable, with no joint effusion.

Impression: no acute traumatic osseous abnormality.

. . . .

X-Ray, Right Hip, unilat. with pelvis when performed, 2–3 views

Findings: There is no evidence of acute fracture, dislocation or osseous lesion. The hip joint space is preserved and the femoral head has a normal contour. The adjacent soft tissues appear unremarkable.

Impression: No acute traumatic osseous injury.

On June 29, Coleman returned to the clinic and saw Dr. Scott Carle. The status report states her diagnosis as "fall, initial encounter," right knee pain, and right hip lateral pain, and it further states that Coleman could return to work without restrictions that day. Dr. Carle's transcription notes provide:

10 days out from fall at work when trying to restrain patient. C/o some right knee and hip pain. Improved. No locking or giving way. Some right lateral hip pain with ambulation.

. . . .

Morbidly obese

. . . .

Normal gait. No tenderness or swelling of extremities. Range of motion is within normal limits. Normal muscle strength and tone. Right Hip: No pain with passive rotation right hip joint. No limp. Right Knee: No knee effusion. Full ROM.
Ligamentous Laxity Test(s): negative Anterior Drawer sign, negative Posterior Drawer sign, no laxity on valgus stress and no laxity on varus stress.
Meniscal Test(s): negative lateral McMurray test and negative medial McMurray test.

. . . .

Functional Restoration and Status of Healing: Diana Coleman is at functional goal, not at end of healing. Comments: Severe deconditioning pr[e]ceded case date.

. . . .

NO MEDICATIONS WERE PRESCRIBED OR DISPENSED FOR THIS ENCOUNTER.

. . . .

Activity Status and Restrictions Treatment Status: Returning for follow-up 5 days Activity Status: There are restrictions not related to this injury. The claimant can return to work with no restrictions on 06/29/2023.

Dr. Carle referred Coleman for physical therapy, but she did not attend therapy.

After seeing Dr. Carle, Coleman sought a change-of-physician form, and she saw other physicians. However, Youth Home denied Coleman's compensable-injury claim and coverage.

On July 10, 2024, Coleman's claim proceeded to a hearing before an administrative law judge (ALJ). Coleman testified that she fell on the tile floor while trying to restrain a patient. She stated that after the incident, she stood up and went to assist with lunch. She also stated that she stayed after her shift ended because "they needed my assistance." Coleman testified that she did not report an injury but mentioned to her coworker, who is a nurse, that she "felt something in [her] back." Coleman explained that she first felt symptoms the next day, and she stated that her right knee felt "stiff and a little sore"; however, she went to work and completed her shift. She stated that during her shift, she felt a "little pain, stiffness in [her] knee."

Coleman testified that she was off work on Wednesday and Thursday, but the pain increased. She testified that the pain radiated from her groin down to her knee. Coleman further stated that she returned to work on Friday and Saturday and worked her entire shifts, but her pain continued to increase. She reported her injury on Monday. During her testimony, she referenced pain in her lower back, but she could not recall whether she reported back pain to the doctors.

Coleman further explained that she did not attend physical therapy referred by Dr. Carle because she "had a problem with this doctor." She noted that he was dismissive. She acknowledged that Dr. Carle determined that she could return to work on June 29, but she believed she could not work because she could not physically restrain patients. She stated that Youth Home offered her light duty, but she declined because she could not sit at a receptionist desk while she was in pain.

4

Coleman testified that she saw other doctors and that they also referred her to physical therapy. Coleman noted that she saw her primary care physician, Dr. Raghavan, as well as Dr. Vargas at OrthoArkansas. She testified that she eventually attended physical therapy and that Dr. Vargas released her to return to work with full duties on September 15, 2023. She stated that she has returned to work.

Following the hearing, on October 8, 2024, the ALJ entered an opinion finding that Coleman failed to establish that she sustained a compensable injury. The ALJ found Dr. Carle's opinion credible, and it noted that his examination revealed no objective signs of a compensable injury attributable to Coleman's fall. The ALJ concluded that Coleman's unsupported and general unspecific complaints of pain were not enough in the absence of substantiating medical evidence. Coleman appealed the ALJ's decision to the Commission.

On February 11, 2025, the Commission affirmed and adopted the ALJ's decision. Coleman now appeals the Commission's decision.

When the Commission denies benefits because the claimant has failed to meet her burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *Osburn v. Pepsi Cola Metro Bottling Co.*, 2021 Ark. App. 157. The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission; if so, the appellate court must affirm. *Id.* Credibility questions and the weight to be given to witness testimony are within the

Commission's exclusive province. *Pack v. Little Rock Convention Ctr.*, 2013 Ark. 186, 427 S.W.3d 586.

It is also within the Commission's province to weigh all the medical evidence and to determine what is most credible. *Minn. Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999). We have long held that the Commission's decision to accept or reject medical opinions and how it resolves conflicting medical evidence has the force and effect of a jury verdict. *St. Edward Mercy Med. Ctr. v. Chrisman*, 2012 Ark. App. 475, 422 S.W.3d 171.

On appeal, Coleman argues that the Commission's decision that she failed to establish a compensable injury to her right knee, hip, and thigh is not supported by substantial evidence. She asserts that the evidence is uncontested that she fell on June 19, 2023, while working at Youth Home. She points out that she had to seek medical treatment and that the medical records from Dr. Carle show that he diagnosed her with a fall at work and injuries to her right knee and hip.

Coleman, as the claimant, had the burden of proving by a preponderance of the evidence that she sustained compensable injuries. *Rodriguez v. M. McDaniel Co.*, 98 Ark. App. 138, 144, 252 S.W.3d 146, 152 (2007). A compensable injury must be established by medical evidence supported by objective findings. Ark. Code Ann. § 11-9-102(4)(D) (Supp. 2023). Objective findings cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16). Complaints of pain are not to be considered objective medical findings. Ark. Code Ann. § 11-9-102(16)(A)(ii)*(a)*.

In this case, we hold that substantial evidence supports the Commission's decision that Coleman failed to establish a compensable injury to her right knee, hip, and thigh. Even though the evidence is uncontested that she fell at work, Coleman offered no objective medical evidence of an injury from that fall. The medical records show that Coleman merely complained of pain, and Dr. Carle determined that Coleman's "severe deconditioning" preceded the workplace injury. The Commission specifically credited his medical opinion. Accordingly, Coleman failed to establish a compensable injury supported by objective findings, and we affirm the Commission's decision denying her benefits.

Affirmed.

GLADWIN and BARRETT, JJ., agree.

*Willard Proctor, Jr., P.A.*, by: *Willard Proctor, Jr.*, for appellant.

*Worley, Wood & Parrish, P.A.*, by: *Melissa Wood*, for appellee.