Cite as 2026 Ark. App. 135

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-25-431

|  |  |  |
|---|---|---|
| | | Opinion Delivered February 25, 2026 |
| MARION PEDERSON | | |
| | APPELLANT | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION |
| V. | | |
| | | [NO. H202890] |
| OPTUM CARE, INC.; AND FARMINGTON CASUALTY/SEDGWICK CLAIMS | | |
| | APPELLEES | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Marion Pederson appeals from an order of the Arkansas Workers' Compensation Commission (Commission) that found Marion had failed in her burden of proving entitlement to benefits for a permanent anatomical impairment as a result of her compensable cervical spine injury.[1] On appeal, Marion argues that (1) the Commission's decision was not supported by substantial evidence, (2) the Commission erred by arbitrarily disregarding relevant medical evidence, and (3) Marion proved that her compensable cervical spine injury was the major cause of her permanent partial disability. We affirm.

---

[1]The Commission reversed the order of the administrative law judge (ALJ), who had awarded benefits for a 7 percent permanent anatomical-impairment rating.

## I. *Relevant Facts*

Marion, age seventy-three at the time of her compensable injury, is an x-ray technician and began working for appellee Optum Care, Inc., in 2020. On April 4, 2022, Marion suffered a fall at work, and Optum Care accepted responsibility for compensable injuries to her right hip, low back, and cervical spine. Optum care covered medical benefits associated with those injuries. However, Marion later claimed entitlement to benefits for a 7 percent permanent anatomical-impairment rating for her cervical spine that had been assigned by Dr. Knox, and Optum Care controverted her claim.

Marion testified that before the compensable injury, she typically worked just one or two twelve-hour shifts a week. However, April 4, 2022, was the fifth day of consecutive twelve-hour shifts. On that day, Marion was performing a shoulder x-ray on a patient when the patient suddenly fainted. Marion grabbed the patient's head to keep it from hitting the floor, and both Marion and the patient fell to the floor. Marion fell on her right side and injured her right hip, low back, and cervical spine. After she fell, her boss had her fill out some workers'-compensation forms, and Marion continued working and finished her shift. Marion then began seeking medical treatment for her injuries, and she came under the care of multiple doctors as well as her longtime chiropractor, Dr. Cynthia Beemer.

Marion acknowledged her history of back and neck problems dating back to 2011 for which she had sought medical care, but she stated that after the compensable fall, her back and neck were markedly worse than before. Marion stated that she now has a constant burning sensation across the back of her neck. She stated that her neck pain and back pain

2

have intensified, her neck pain "is anywhere from a four to an eight every day," and the pain radiates down her arm and into her fingers. She stated further that she now has limited range of motion in her neck and can turn her head only about forty-five degrees to the left. She stated that when she visited Dr. Beemer before the accident on March 7, 2022, she reported neck pain of 3/10 and that when she saw him after the accident on April 5, 2022, she reported neck pain of 8/10. Marion has continued to seek treatment for her cervical spine injury since the date of the accident.

Marion stated that the compensable fall at work has adversely affected her daily life. She can no longer work out as much or as intensely as before, and she has a weakened grip in her hands. Marion stated that she has continued to work because she enjoys her job and the people she works with but stated that she now only works eight-hour shifts one or two days a week. Marion stated that before the compensable fall, "[she] had pain and some motion issues but nothing as intense as this."

The relevant medical documentation was as follows. Marion began treating at Beemer Back Center beginning in July 2011, and on her first visit, she complained of low back pain going into her right buttock. Her chiropractic treatment included "manipulation to the cervical region." Marion visited her chiropractor about twice a week for the next several years.

In May 2020, a report from NWA Neurosciences Pain Management stated, "The patient is being seen for a routine clinic follow-up of neck pain. . . . New complaint of neck pain. She has had some neck issues 6 years ago on the left side. Very painful to turn her

3

head." The report stated that Marion's chief complaint was neck pain radiating to the left trapezius and left shoulder and that she described the pain as "sharp, dull, and aching." The report identified a list of "Active Problems" that included "bulge of cervical disc without myelopathy" and "cervical spondylosis."

A chiropractic report on March 7, 2022, noted that Marion reported her neck pain as a 3/10 and that she had only mild muscle spasms in her neck. A chiropractic report on April 5, 2022, which was the day after the accident, noted that Marion reported her neck pain as an 8/10 and that she had severe muscle spasms in her neck.

On May 2, 2022, Marion had an x-ray of her cervical spine. The x-ray report noted "mild disc space narrowing is seen at C4-C5 and C5-C6 with small osteophyte formation." The impression given was "[n]o acute cervical spine abnormality. Minimal degenerative disc disease."

Marion had an MRI of her cervical spine on May 13, 2022, with the impression "multilevel cervical spondylosis, worst at the C3-C4 through C6-C7 levels." Another MRI performed on May 16, 2022 noted "moderate to severe arthritic changes." There was a follow-up MRI on November 28, 2022, with the following impression:

> 1. MULTILEVEL CERVICAL SPONDYLOSIS WITH MODERATE CANAL STENOSIS AT C4/5 AND C5/6.
>
> 2. SEVERE BILATERAL NEURAL FORAMINAL NARROWING AT C3/4, SEVERE RIGHT NEURAL FORAMINAL NARROWING AT C4/5, AND SEVERE BILATERAL NEURAL FORAMINAL NARROWING AT C5/6.

Optum Care corresponded with Dr. Owen Kelly, an orthopedic surgeon, to review the medical records and provide an opinion on Marion's condition. Dr. Kelly prepared a report on March 23, 2023. Dr. Kelly reported:

> Ms. Pederson has a degenerative disc disease of the cervical spine confirmed by objective imaging. She may have sustained a cervical sprain/strain at the time of the accident, but no identifiable injury is noted. Her functional and neurologic studies are normal. The degenerative findings are not related to the 4/4/21[2] accident. . . . Ms. Pederson has reached maximum medical improvement as it relates to the 4/4/21 accident. . . . No impairment rating would be associated with the 4/4/21 accident.

On August 24, 2023, Marion came under the care of a neurosurgeon, Dr. David Knox. On that day, Dr. Knox reported cervical disc disorder with radiculopathy, cervical spondylosis, cervical stenosis of spinal canal, and chronic right shoulder pain. On October 16, 2023, Dr. Knox filled out a questionnaire provided by Marion's attorney opining that Marion had reached maximum medical improvement and had sustained a 7 percent whole-body permanent-impairment rating. On October 17, 2023, Dr. Knox reported:

> Patient 1 and a half years status post work comp injury continuing difficulty with cervical radiculopathy. Reviewed MRI scan demonstrating significant disc herniation on the right at C4-5 C5-6. I informed her that surgical options do exist. . . . She wants to settle her course a [sic] filled out her paperwork recommended that she close her case she would qualify for a 7% permanent partial disability.

After reviewing the testimony and the medical evidence, the ALJ found that Marion had proved by a preponderance that she was entitled to benefits for a 7 percent permanent

---

[2]In his report, Dr. Kelly mistakenly identified the accident date as April 4, 2021, instead of April 4, 2022.

anatomical-impairment rating as assigned by Dr. Knox. Optum Care appealed the ALJ's decision to the Commission.

The Commission reversed the decision of the ALJ and denied Marion's claim for a permanent anatomical impairment. The Commission made these findings:

> In the present matter, the Full Commission finds that Dr. Kelly's opinion is credible and is entitled to more evidentiary weight than Dr. Knox's opinion. The evidence does not demonstrate that the claimant sustained a herniated disc as a result of the compensable injury sustained on April 4, 2022. The Commission reiterates that an x-ray of the claimant's cervical spine taken on May 2, 2022 showed "No acute cervical spine abnormality." Subsequent diagnostic testing revealed degenerative spondylosis with no probative evidence demonstrating that the claimant sustained a herniated cervical disc as a result of the April 4, 2022 compensable injury. The evidence of record corroborates Dr. Kelly's expert opinion, "No impairment would be associated with the 4/4/21 accident."
>
> The Full Commission finds that the claimant did not sustain any percentage of permanent anatomical impairment as a result of the April 4, 2022 compensable injury. The claimant did not prove that she sustained permanent anatomical impairment in accordance with the 4th Edition of the *Guides*, and the claimant did not prove she sustained permanent anatomical impairment established by objective or measurable physical findings. The claimant did not prove that the compensable injury was the major cause of any percentage of permanent physical impairment. The Full Commission finds that Dr. Kelly's opinion is entitled to significant evidentiary weight and Dr. Knox's opinion is entitled to minimal evidentiary weight.

Marion now appeals from the Commission's decision.

## II. *Standard of Review*

In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Johnson v. Land O'Frost, Inc.*, 2025 Ark. App. 41, 704 S.W.3d 671. Substantial evidence is evidence that a reasonable mind might accept as

6

adequate to support a conclusion. *Id.* When the Commission denies benefits because the claimant has failed to meet her burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *Osburn v. Pepsi Cola Metro Bottling Co.*, 2021 Ark. App. 157.

The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission. *Ark. Forestry Comm'n v. Lindsey*, 2021 Ark. App. 497, 638 S.W.3d 333. Additionally, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Id.* Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony, and we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. *Wilson v. Smurfit Stone Container*, 2009 Ark. App. 800, 373 S.W.3d 347. When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *Id.* Finally, this court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858.

## III. *Analysis*

On appeal from the Commission's decision, Marion argues that the Commission's finding that she failed to prove a 7 percent anatomical impairment resulting from her

7

compensable cervical spine injury was not supported by substantial evidence. Marion argues

further that the Commission arbitrarily disregarded relevant medical evidence and that

Marion proved that her compensable cervical spine injury was the major cause of her

permanent partial disability.

A compensable injury, as defined in Arkansas Code Annotated section 11-9-102(4)(A)(i) (Supp. 2021), is

> [a]n accidental injury causing internal or external physical harm to the body . . . arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence[.]

We have previously defined "permanent impairment" as "any permanent functional or

anatomical loss remaining after the healing period has ended." *Ark. State Mil. Dep't v. Jackson*,

2019 Ark. App. 92, at 9, 568 S.W.3d 811, 817 (quoting *Main v. Metals*, 2010 Ark. App. 585,

at 9, 377 S.W.3d 506, 511). Under the statute, any determination of the existence or extent

of physical impairment must be supported by objective and measurable findings. Ark. Code

Ann. § 11-9-704(c)(1)(B) (Repl. 2012). A claimant will not receive an award for permanent

benefits unless the injury is the major cause of the disability or impairment. Ark. Code Ann.

§ 11-9-102(4)(F)(ii)*(a)*. "Major cause" means more than 50 percent of the cause, which the

claimant must establish by a preponderance of the evidence. Ark. Code Ann. § 11-9-102(14)(A); *see also Jackson*, *supra*. If a compensable injury combines with a preexisting disease

or condition to cause or prolong disability or a need for treatment, a claimant will not receive

an award for permanent benefits unless the injury was the major cause of the permanent disability or need for treatment. Ark. Code Ann. § 11-9-102(4)(F)(ii)*(b)*.

Marion argues that the Commission's findings are not supported by substantial evidence and that reasonable minds could not reach the same result. Marion cites *Prock*, 2014 Ark. 93, 431 S.W.3d 858, where the supreme court stated that the Commission may not arbitrarily disregard the testimony of any witness, and it likewise may not arbitrarily disregard evidence in support of a claim. Marion asserts that the Commission arbitrarily disregarded the opinion of Dr. Knox, who assessed cervical herniations that were not present before the compensable fall and assigned a 7 percent anatomical-impairment rating. Marion further asserts that the Commission arbitrarily disregarded her testimony, which corroborated Dr. Knox's opinion that the compensable fall resulted in a permanent impairment.[3] In her testimony, Marion did not dispute that she had cervical pain and degenerative disc disease before the accident, but she testified that after the accident, her pain and symptoms were far worse.

Marion acknowledges that that Commission credited the opinion of Dr. Kelly, an orthopedic surgeon who found that Marion had degenerative disc disease and had no impairment related to the injury. However, under the circumstances presented, Marion

---

[3]Marion also argues that the Commission disregarded the ALJ's credibility findings. We note, however, that the Commission reviews an ALJ's decision de novo, and it is the duty of the Commission to conduct its own fact-finding independent of that done by the ALJ. *ConAgra Packaged Foods, LLC v. Beauchamp*, 2024 Ark. App. 548, 703 S.W.3d 164. Therefore, regardless of the ALJ's findings, it was the Commission's duty to accord weight to medical evidence and evaluate the testimony. *See id*.

contends that no reasonable person could find Dr. Kelly's opinion more credible than that of Dr. Knox. Marion notes that Dr. Kelly had never treated Marion, while Dr. Knox treated her multiple times between August and October 2023. Marion argues further that because Dr. Knox is a neurosurgeon, he had more specialized knowledge and skills to diagnose cervical injuries than her previous treating physicians or Dr. Kelly. Marion also notes that in his report, Dr. Kelly repeatedly misstated the date of the work-related accident (4/4/21 instead of 4/4/22), which she contends accentuates his lack of a thorough review of the medical history and the timeliness of her injury.

Finally, Marion argues that she proved that her compensable cervical spine injury was the major cause of her permanent partial disability. She states that both her testimony and the medical report of Dr. Knox reflect that while she does have a history of minor neck pain, the fall at work resulted in a severe cervical injury and a 7 percent permanent anatomical impairment.

We do not agree with Marion's arguments, and we hold that the Commission's decision displays a substantial basis for the denial of relief. The Commission's opinion discussed the relevant medical evidence, which included a history of Marion's cervical problems dating back to more than ten years before the compensable fall. A medical report from May 2020 diagnosed cervical spondylosis and noted that Marion's chief complaint was neck pain that she described as "sharp, dull, and aching" and that it was very painful for her to turn her head. The Commission also noted in its opinion that after the compensable fall on April 4, 2022, the subsequent diagnostic testing revealed degenerative changes but no

10

acute abnormality. A May 2 x-ray noted no acute spinal abnormality and minimal degenerative disc disease; a May 13 MRI noted multilevel cervical spondylosis; and a May 16 MRI noted moderate to severe arthritic changes.

The Commission found that Dr. Kelly's opinion was credible and was entitled to more evidentiary weight than Dr. Knox's opinion. Although Marion contends that Dr. Knox's opinion was arbitrarily disregarded, we cannot agree. Dr. Kelly, a board-certified orthopedic surgeon, reviewed the relevant medical history and diagnostic testing and concluded that Marion has degenerative disc disease that is unrelated to the accident and that there was no impairment rating associated with the accident. It was well within the Commission's authority to credit Dr. Kelly's opinion over that of Dr. Knox, and the Commission noted in its order that Dr. Kelly's findings were consistent with the prior test results that had failed to identify any herniation or acute injury.

The Commission here was confronted with opposing medical opinions, and it is within the Commission's province to reconcile conflicting evidence, including the medical evidence. *Chance v. Lowe's Home Ctrs., Inc.*, 2023 Ark. App. 495, 678 S.W.3d 78. The Commission has the duty to weigh medical evidence, and the resolution of conflicting evidence is a question of fact for the Commission. *Id.* It is well settled that the Commission has the authority to accept or reject a medical opinion and the authority to determine its medical soundness and probative force. *Id.* Here, the Commission's opinion evaluates and discusses the relevant evidence, and no evidence was arbitrarily disregarded. This case is a

11

classic "dueling-doctors" case in which the Commission must resolve the conflicting evidence, and it did so here.

Our standard of review requires that we view the evidence and all reasonable inferences in the light most favorable to the Commission and affirm if substantial evidence supports the decision. *Dodson v. Valley Behav. Health Sys.*, 2022 Ark. App. 128. The issue is not whether we would reach a different result but whether reasonable minds could reach the result found by the Commission. *Chance, supra.* If reasonable minds could reach the result found by the Commission, we must affirm. *Id.* Having reviewed the record, we cannot say that fair-minded persons with the same facts before them could not have reached the Commission's conclusion that Marion failed to prove that she sustained a permanent anatomical impairment as a result of the compensable fall at work.

IV. *Conclusion*

We are not persuaded by any of Marion's arguments on appeal, and we hold that the Commission's opinion displays a substantial basis for the denial of a permanent partial impairment. Accordingly, the Commission's decision is affirmed.

Affirmed.

KLAPPENBACH, C.J., and TUCKER, J., agree.

*Laura Beth York*, for appellant.

*Anderson, Murphy & Hopkins, L.L.P.*, by: *Randy P. Murphy* and *Elizabeth W. Strickland*, for appellees.